when it had asked for bids on 1, 2, 3 and 4, and plaintiff had bid on all four items. When defendant asked plaintiff to do so, plaintiff insisted it had bid on all four items and insisted on a contract for all four.

■ When plaintiff failed to accept defendant's offer of a contract for items 2, 3 and 4 only, defendant withdrew it and notified plaintiff it would either accept or reject its bid as made. This was never done. No contract, therefore, resulted.

There is, however, this feature to the case on which we have not touched and which was not dealt with by the parties. On the day before defendant wired plaintiff withdrawing its partial award, plaintiff wrote defendant, continuing to protest that the award did not conform to its bid, but the letter concluded:

"We request that the formal notice of award and copies of Contract be forwarded, corrected or otherwise. Upon receipt of which, we will furnish the required Bond."

By this plaintiff apparently meant to say that if it could not be awarded a contract in conformity to its bid, it would accept one in accord with defendant's partial award.

■ If this letter had been received by defendant before it sent its telegram on January 17 withdrawing its award, defendant would have been bound on it, but it was not received until the next day. Not having been received before withdrawal of the award, no contract resulted. See Rhode Island Tool Co. v. United States, 128 F.Supp. 417; 130 Ct. Cls. 698; Dick v. United States, 82 F. Supp. 326, 113 Ct.Cls. 94.

Defendant's motion for summary judgment is granted, and plaintiff's petition will be dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

**PUBLIC SERVICE ELECTRIC AND GAS CO.**

**v.**

**UNITED STATES.**

**No. 318–56.**

United States Court of Claims.
Jan. 15, 1958.

Karl R. Price, Washington, D. C., for plaintiff. Ellsworth C. Alvord and Alvord & Alvord, Washington, D. C., were on the briefs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

MADDEN, Judge.

This is a suit for refund of income taxes for the taxable period July 1 to December 31, 1948, the amount claimed being $593,724.42. The basis of the plaintiff's claim is that it was entitled to but was denied a certain credit in computing its surtax net income. It relies upon sections 15(a) and 26(h) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 15(a), 26(h).

Section 15(a) says that "corporation surtax net income," in the case of a public utility, means the net income minus, *inter alia,* the credit provided in section 26(h) for dividends paid on its preferred stock. Section 26(h)(2)(B) defines the characteristics required of stock in order for it to qualify as preferred stock for the purpose of the credit here in question. The plaintiff's stock is admittedly qualified except in one respect, which will be discussed hereinafter. The section says that preferred stock, in order to qualify, must have been issued before October 1, 1942, or, if issued after that date, it must have been issued to refund or replace bonds or debentures or other preferred stock issued prior to that date. In the case of the preferred stock issued after October 1, 1942, but issued to refund or replace prior outstanding securities, the section expressly provides in a parenthesized statement that the stock may qualify if it was issued by the same or another corporation in a transaction,

*inter alia,* subject to Supplement R of the Internal Revenue Code of 1939. Supplement R deals with transactions carrying into effect the "death sentence" provisions of section 11(b) of the Public Utility Holding Company Act of 1935. 49 Stat. 820, 15 U.S.C.A. § 79K(b). See sections 371(f) and 373(a) of the Internal Revenue Code of 1939.

The plaintiff in 1948 was, and for many years prior thereto had been, a public utility in New Jersey. Until July 1, 1948, all of its common stock (except directors' qualifying shares) and most of its 7% preferred stock were owned by Public Service Corporation of New Jersey, a holding company which was not a public utility. Prior to July 1, 1948, the holding company's outstanding securities consisted of a common stock, four different classes of preferred stock, and certain 6% Perpetual Interest-Bearing Certificates. All of its preferred stock had been issued prior to October 1, 1942.

Effective July 1, 1948, the holding company was dissolved pursuant to section 11(e) of the Public Utility Holding Company Act of 1935. One of the elements of the plan of dissolution was the reclassification of the plaintiff's common stock into 5,503,193 shares of "new common stock" and 6,062,767 shares of "dividend preference stock". The latter stock had the qualifications of preferred stock, as defined in the statutes here involved. The plaintiff's dividend preference stock was issued to the holders of all four classes of the holding company's preferred stock on the basis of an exchange ratio prescribed for each of the four classes of the holding company's preferred stock.

The plaintiff's preferred stock satisfies the verbal requirements of the pertinent statutes. Though it was issued after October 1, 1942, it was issued in a transaction subject to Supplement R, to replace other preferred stock issued before October 1, 1942. The Government says that the statutes must not be read so literally. It says that the reason for the

enactment, in 1943, of section 26(h)(2)(B) was that public utility corporations, whose charges to their customers were fixed by public authority, would be hard pressed to pay the proposed high wartime surtax tax rates; that many such corporations had obtained their financing by issuing preferred stock instead of bonds, the interest on which bonds would have been deductible from income by any taxpayer, and that those which had obtained their financing in the former manner should not be subjected to such a harsh discrimination. This dividends paid credit was designed to place public utilities, which were financed largely by issuing preferred stock, on an equality with other corporations, which were financed by bond issues the interest on which was deductible from the corporations' incomes. The Government says that, since the statute, in general, did not grant the dividends paid deduction in cases of post-1942 issues of preferred stock, it would not have intended that some post-1942 issues, having no antecedents which fell within the reason for the deduction, should qualify.

The Government says that since the holding company was not a public utility, it was never entitled to deduct from its income the dividends paid on its preferred stock from the time of the enactment of the original section 26(h)(2)(B) in 1942 until 1948, hence the allowance of the credit to the plaintiff's preferred stock issued in 1948 would not be the preservation of a pre-existing status, but the allowance of a wholly new credit.

The plaintiff says that Congress did not attempt to foreclose, in all circumstances, the allowance of a credit in cases where the necessary qualifications for the credit were first acquired after October 1, 1942. If a corporation which was not in the public utility business in 1942, but which had preferred stock outstanding, entered the public utility business thereafter, its preferred stock would qualify. For example, if the "death sentence" plan in the instant case had been to dissolve the plaintiff, the operating public utility, and convert the holding company into an operating public utility, its outstanding issues of preferred stock would have qualified for the credit. If a public utility business had stock outstanding which for some reason lacked one or more of the prescribed elements of preferred stock, but, after October 1, 1942, acquired the necessary elements, it would qualify.

Treasury Regulations 111, section 29.26–5(c) (T.D. 5384, C.B. 1944, 148), issued after the enactment of section 26(h)(2)(B), contained nothing which supports the Government's present contention, and the Regulations have never been amended in that regard. In Philadelphia Electric Co. v. United States, 117 F.Supp. 424, 127 Ct.Cl. 297, the reading of the statute for which the Government now contends would have been decisive of the case, but the Government did not there urge such a reading. Not until the issuance of Revenue Ruling 57–45, I.R.B. 1957–5, 29, published February 4, 1957, did the Government take the position which it here seeks to maintain.

The statute here in question is reasonably clear on its face. There is no legislative history indicating that Congress intended something different from what its language seems to say. There is no uniform and consistent overall statutory purpose which is violated by reading the statute as it is written. The Government's proposed reading seems not to have occurred to it until some fourteen years after the enactment of the statute. In these circumstances we think we would not be justified in concluding that the meaning of the statute is essentially different from that which its words seem to express.

The plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

REED, Justice (Ret.), sitting by designation, JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

**Edith ROBERTS, Louis Roberts and Richard Roberts, d.b.a. Roberts' Technical and Trade Schools, and David G. Baird and Harry J. Reicher, trustees of the Baird Fund**

v.

**UNITED STATES.**

**No. 477–52.**

United States Court of Claims.
Jan. 15, 1958.

Loyal V. Buescher, Cleveland, Ohio, for plaintiffs. Paul W. Walter and Walter & Haverfield, Cleveland, Ohio, were on the brief.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

This is a suit by plaintiffs as the owners of a trade school operated in New York City to recover tuition for instruction furnished veterans pursuant to a series of contracts with the Veterans Administration.[1] Under these contracts plaintiffs' school furnished education and training to eligible veterans under the

---

1. Plaintiffs' school was originally established in 1947 as a corporation for profit under the laws of the State of New York and was then known as Roberts'