**IDAHO POWER COMPANY**

v.

**UNITED STATES.**

No. 208–55.

United States Court of Claims.

May 7, 1958.

E. Roy Gilpin, New York City, for plaintiff.

Jerome S. Hertz, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Lyle M. Turner, Washington, D. C., was on the brief.

MADDEN, Judge.

The plaintiff corporation sues to recover $91,145.80 of income and excess profits taxes, a part of the taxes paid by it for the year 1944. The ground for its suit is that it was denied a "dividends paid" credit or reduction of its taxable income, which reduction it claimed on account of certain payments made by it in connection with the rearrangement of the structure of its preferred stock.

The plaintiff is a public utility. Its contentions in this suit are, in part, the same as those made by the Atlantic City Electric Co. v. United States, Ct.Cl., 161 F.Supp. 811. We will not repeat here the background material which is recited at length in the Atlantic City Electric Co. case.

The plaintiff's preferred stock met the qualifications prescribed in section 26(h) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 26(h), to make the dividends on that stock eligible for the tax deduction provided for in that section. In 1944 it had outstanding common stock and two classes of preferred stock, one class being 7 percent stock and the other, in effect, 6 percent stock. Both classes of preferred stock were callable by the corporation at $110 per share plus accrued dividends. The corporation called the preferred stock by offering the stockholders the choice of either exchanging their stock, share for share, for new 4 percent preferred stock plus $8 per share in cash, plus accrued dividends, or surrendering their stock for $110 per share in cash, plus accrued dividends.

At this time 88 percent of the preferred stock was owned by persons who did not own any common stock.

Some two thirds of the shares of preferred stock were exchanged for the new 4 percent preferred stock and the cash. The other one third were redeemed for the $110 per share in cash.

As to the payments made for the redemption of preferred stock, the plaintiff's situation is like that of the taxpayer in Atlantic City Electric Co., supra, and our conclusion is that the plaintiff's payments were not "dividends" within the meaning of section 26(h).

The plaintiff claims that the "boot money," the $8 per share which was paid to the holders of the 6 percent and 7 percent shares which were exchanged for the new 4 percent stock, was a dividend within the meaning of section 26 (h) for reasons which vary somewhat from those urged in support of the claim relating to the redeemed stock. It points to section 112(c) of the Internal Revenue Code of 1939 which says, in effect, that in an otherwise tax-free exchange of property by a corporation, in a reorganization transaction, if there is boot money paid, and if the payment "has the effect of the distribution of a taxable dividend," then the boot money should be taxed to the distributee as a dividend, i. e., as ordinary income and not as capital gain.

It will be remembered that section 115(c) provides that distributions in liquidation shall be treated as payments for the stock liquidated and not as taxable ordinary income. The Government argued successfully in Atlantic City Electric Co., supra, that if the payment was not a dividend received in the hands of the distributee-shareholder, it was not a dividend-paid as regards the distributor-corporation. By comparable reasoning, it would seem that, in the case of a reorganization covered by section 112(c), if the boot payment is such that it is treated as a taxable dividend in the hands of the distributee, it should be a tax deduction for the distributor.

We consider, then, whether the $8 payment had "the effect of the distribution of a taxable dividend," within the meaning of section 112(c) (2). Section 115 (g) has a comparable provision for redemption situations. It says:

"If a corporation cancels or redeems its stock * * * at such time and in such manner as to make the distribution and cancellation or redemption * * * essentially equivalent to the distribution of a taxable dividend * * *"

the distribution shall be treated as a taxable dividend.

Both of these provisions have the purpose of preventing the distribution, under the guise of a liquidation or a reorganization, of what are in effect dividends and giving the distribution the favorable tax status of a capital gain transaction.

█ The plaintiff says that all that is required to bring the distribution within the coverage of section 112(c) (2) is that there should be an exchange of stock and the payment of boot money. It says that the existence of these two facts produces the legal conclusion that the boot money was a taxable dividend to the stockholder, and a tax deduction to the corporation; that the statutorily required eqivalence follows, *ipso facto*. It urges that Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611, so holds.

The text of section 112(c) seems to us to contradict the plaintiff's contention. Paragraph (1) of the section treats of an exchange of stock which would be tax free except for the payment of boot money, and provides that if the boot money represents a gain to the shareholder, the gain should be taxable as such. Then paragraph (2), on which the plaintiff relies, provides that if the exchange would otherwise be within the provisions of paragraph (1), "but has the effect of the distribution of a taxable dividend," then the boot money should be taxed to the distributee as a dividend, to

the extent that it is paid out of earnings and profits. If Congress meant merely to say that any boot money at all paid out of earnings should be a taxable dividend, it used a verbose and complicated way of saying it.

The plaintiff says that the Supreme Court of the United States in Commissioner v. Estate of Bedford, supra, held what we are urged to hold. In that case it was quite plain that the cash payment made in connection with the exchange was made to get around a New York statute which prevented the corporation from avowedly paying a dividend. There were other circumstances indicating that the payment was the distribution of a dividend under another guise. The Court's opinion did not emphasize the facts showing equivalence, but we do not read the decision, as the plaintiff does, as making equivalence in fact legally irrelevant.

This court, in Stein v. United States, 62 F.Supp. 568, 104 Ct.Cl. 446, recited the particular facts showing that the payment was equivalent to a dividend, and in Smith v. United States, 130 F. Supp. 586, 131 Ct.Cl. 748, it recited the facts showing that the payment was not so equivalent. In Rheinstrom v. Conner, 6 Cir., 125 F.2d 790, the court analyzes numerous cases in which courts have determined, on the facts of each case, the question of equivalence. We think we must do so in this case.

In the litigation over the application of section 112(c) (2) and the comparable section 115(g), distributee-taxpayers have sought to convince the courts that the distribution was not the equivalent of a dividend. The Government has urged the contrary. On the other hand, corporation-distributors have urged that the distributions were dividends, in order to get the tax credit granted by section 26(h) to public utility corporations, or by section 27 to corporations charged with unreasonably accumulating surplus, and corporations whose stock is closely held. In the section 26(h) and section 27 cases, the Government has sometimes not contested very vigorously the allow-

ance of the dividends-paid credit to the corporation if it could be sure that the payments had been taxed to the shareholders as dividends.

The test of whether the payment is the equivalent of a dividend is the same in the case of a corporation which seeks an affirmative response as in the case of a shareholder who seeks a negative response.

In the instant case, as we have seen, the holders of the 6 and 7 percent preferred stock were given the option of redemption at $110 or exchange for 4 percent, $100 par new issue preferred stock. Some 40,000 shares were exchanged and some 20,000 redeemed. At the time of the redemption and exchange, 88 percent of the old preferred stock was owned by persons who did not own any common stock of the corporation, of which there were 450,000 shares of $20 par value outstanding. There had been authorized, but unissued, some 40,000 additional shares of preferred stock which the corporation had the power to issue at any time. In the process of reorganization the by-laws were amended so that the unissued shares could not be issued except upon a majority vote of the common stock and a majority of the preferred stock, unless certain specified conditions were met.

■ An important indicium of equivalence of a payment to a dividend is present if, after the exchange of stock and the payment, the shareholder still has the same or substantially the same interest in the corporation after the payment that he had before. The ordinary dividend received by a shareholder does not disturb his interest in the corporation at all. He has the right, in the future, to the same fixed rate of dividend on his preferred stock, or the same share of the profits, on his common stock, as he had before the dividend was paid. In the instant case the shareholders' status, for the future, was drastically changed. His rate of return upon his stock was reduced from 7 percent or 6 percent to 4 percent, a reduction of 42 percent or 33⅓ percent. It is not conceivable that one holding such shares in this prosperous corporation, with its preferred stock dividends all paid up to date, would have made such an exchange for a boot of $8 except under the compulsion that otherwise his stock would be redeemed at $110. This last figure was, in fact, less than the market price of the shares had been before the redemption action was initiated.

The reorganization was for the benefit of the common stockholders who were, as we have seen, almost entirely different persons from those who held the preferred stock. In the solicitation of proxies for the stockholders' meeting to authorize the redemption of the preferred stock, the president of the plaintiff stated that the proposed action would result in a saving to the corporation, after taxes, of $128,775 per year. The reorganization also made an important increase in the voting power of the common stock, by requiring its separate concurrence in the future issuing of the unissued shares of preferred stock.

■ We think that the payment of money here in question, made in the course of a reorganization which so severely reduced the interest of the shareholders in the corporation, did not have "the effect of the distribution of a taxable dividend" within the meaning of section 112(c) (2).

The Government has raised a question as to the adequacy of the plaintiff's claim for refund as to the redemption premium and a question as to the sufficiency of earnings and profits to cover all the distributions made in 1944. Both of these questions are interesting and, probably, difficult. In view of our conclusion as to the question treated at length in the opinion, we need not resolve them.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.