**ATLANTIC CITY ELECTRIC COMPANY**

v.

**UNITED STATES.**

No. 33–55.

United States Court of Claims.

May 7, 1958.

N. Barr Miller, Washington, D. C., for plaintiff. J. Marvin Haynes, Haynes & Miller, F. Eberhart Haynes, Oscar L. Tyree and Joseph H. Sheppard, Washington, D. C., were on the briefs.

George Willi, III, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Lyle M. Turner and James P. Garland, Washington, D. C., were on the briefs.

MADDEN, Judge.

The plaintiff sues for $84,105.60 of income tax paid by it for the year 1944. It claims that it should not have had to pay this tax because it was entitled to a credit which would have reduced its taxable income.

Section 26(h) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 26(h), provided that a public utility corporation, in computing its surtax net income, was entitled to a credit for, i. e., a deduction of, "the amount of dividends paid during the taxable year on its preferred stock." The plaintiff was a public utility, and the stock in question qualified in all respects for the benefits of section 26(h). The question is whether the payments made by the plaintiff during 1944 were "dividends" within the meaning of section 26(h).

In Public Service Electric & Gas Co. v. United States, Ct.Cl., 157 F.Supp. 846, this court discussed the reason for the enactment by Congress of section 26(h). It there appears that Congress desired to give to public utility companies which had financed themselves by issuing preferred stock a status, for tax purposes, similar to that of such corporations which had financed themselves by issuing bonds. Since the interest on the bonds was deductible, dividends on preferred stock were made deductible.

The payments which the plaintiff made to its stockholders, and sought to deduct from its taxable income, were not the payments of $6 per share which accrued annually on its preferred stock and which, under the terms of that stock, had to be paid before the common stockholders could be paid any dividends. The payments here in question were payments of $20 per share, in addition to the $100 par value of the preferred shares, for the redemption of the stock. The preferred stock as issued provided that the plaintiff corporation could, at its option, redeem the shares for $120 plus accrued dividends, and the plaintiff did so redeem them. The accrued dividends so paid were clearly deductible under the provisions of section 26(h), and they are not involved in this case. The redemption payments of $20 per share are the payments in question. As we have said, the question is whether they were "dividends" within the meaning of section 26(h).

To the layman, a payment to a shareholder of a sum in addition to the regular dividends provided for in his stock certificate, a sum which would never be paid again because it was paid for the redemption and cancellation of the stock, would not be regarded as a dividend. But the meaning of a word in the tax statutes is not a question for a layman, unless the by no means impossible situation occurs when, as a last resort, refuge is taken in the lay meaning.

Since section 26(h) merely uses the word "dividend" without definition, one must look elsewhere in the statutes to learn whether it applies to the instant situation in which the payment was not obviously a dividend. The plaintiff points to section 115(a) of the Internal Revenue Code of 1939 for the definition of "dividend" for the instant purpose. That section says:

"The term 'dividend' * * * means any distribution made by a corporation to its shareholders * * * out of its earnings or profits * * *."

The $20 per share payment in question was made out of accumulated earnings of the plaintiff. Therefore, the plaintiff says, it was by definition a dividend and was covered by the language of section 26(h).

The Government says that before one reaches a conclusion as to the effect of the broad definition of dividend in section 115(a), one must look at section 115(c), which provides for "Distributions in liquidation" and says:

"Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation * * * as in part or full payment in exchange for the stock."

The payments of the $120 per share for the redemption of the $100 par value stock liquidated the stock. According to section 115(c), the entire $120 was taxable to the stockholder who received it, if it was taxable at all, only to the extent that the $120 represented a capital gain to the distributee-shareholder, and was taxable only at capital gains rates. It might well have involved no capital gain to him at all, as, for example, if he had paid $120 per share for the stock.

The Government says that section 115(c), in saying that amounts distributed in liquidation shall be treated as "payment in exchange for the stock," not only means that they shall be so treated in the hands of the distributee-shareholder, but that they shall be so treated as regards the distributor-corporation. If they are so treated, the corporation has, for tax law purposes, not distributed a dividend, but bought a share of stock. That would not entitle it to any deduction under section 26(h).

The Government urges that it would be an illogical and asymmetrical reading of section 115(c) to regard it as applying only to the distributee-shareholder side of the redemption transaction, and not to the distributor-corporation side. There would, however, have been a valid rea-

son for the distinction, if Congress chose to make the distinction. From the corporation's side, the money distributed was earnings which had accumulated in its treasury. As we have suggested above, to the distributee-shareholder it may not have represented any profit at all. He may well have, in the money market of those times, regarded a 6 percent preferred stock redeemable at $120 as worth $120, or $110, and have paid that much for it, so that the $20 was not, or was not all, profit or other income. A similar situation might occur with regard to unpaid cumulative preferred stock dividends which were finally paid, as dividends, but for most of which the shareholder had already paid when he purchased the stock in the market. Section 115(c) would not take care of such a taxpayer. Whether any other provision of law would help him we do not know.

We are not persuaded, then, by the Government's argument for symmetry in the interpretation of section 115(c). We think it is fair for the plaintiff to urge that the definition in section 115(a) covers its case, and is not negatived by section 115(c).

The plaintiff points to another provision which is in the third sentence of section 115(c) and which says:

"In the case of amounts distributed * * * in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits."

The plaintiff says that this sentence contains a negative inference that the part of a distribution in partial liquidation which *is* properly chargeable to earnings, and hence not "properly chargeable to capital account" is a distribution of earnings and is therefore a dividend, within the definition of section 115(a). The statement in the sentence quoted above is a statement of the obvious. The Government says it was inserted to clarify the question whether, when a corporation had earnings accumulated prior to 1913, and redeemed a part of its stock at prices which took into account the value created by the pre-1913 earnings, and later distributed a dividend, the distributee could claim that the earlier distribution exhausted the post-1913 earnings and hence the later distribution was from the pre-1913 earnings and was tax free. In fact, in an earlier version of this sentence of section 115(c), viz., section 201(c) of the Revenue Act of 1924, 43 Stat. 253, it expressly said that distributions properly chargeable to capital account should not be considered as distributions of earnings or profits "for the purpose of determining the taxability of subsequent distributions by the corporation." The Revenue Act of 1936, 49 Stat. 1648, dropped the limiting language just quoted, but Congress gave no reason for dropping it.

Our consideration up to this point shows a definition in section 115(a) which would make the plaintiff's distribution a "dividend" for all purposes, including the purpose of the section 26(h) deduction, and a miscellany of provisions in section 115(c) which qualify the definition given in 115(a). The first sentence in 115(c) says that distributions in liquidation, though they would be dividends within the definition of 115(a), shall not be treated, for tax purposes, as dividends, but shall be treated as payments of purchase price of the liquidated stock. This sentence does not tell us whether these payments should be so treated as regards both the distributee-shareholder and the distributor-corporation or only as regards one of them. The second sentence of section 115(c) which provides for determination and recognition of gain or loss is expressly applicable only to the distributee-shareholder. The third sentence could be applicable to both parties to the transaction, but the negative inference which it contains cannot have the effect of making the distributions of earnings taxable to the distributee as dividends, without contradicting the first and second sentences of the same section. The foregoing summary shows that the statutory situation is confused.

There have been other situations in which it has been advantageous to taxpayers to show that distributions made, or received, were dividends. We consider those situations for possible enlightenment on our problem.

Section 216(a) of the Revenue Act of 1918, 40 Stat. 1057, 1069, allowed taxpayers a tax credit for the "amount received as dividends from a corporation." In Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, the taxpayer had received, in a distribution in liquidation of a corporation, money which had been accumulated as earnings of the corporation. He claimed the credit, pointing to the definition of dividends in section 115(a), which was section 201(a) of the Revenue Act of 1918. The Court held that he was not entitled to the credit, in spite of the 115(a) definition of dividends because 115(c), then 201(c) expressly provided that the payments in liquidation should be treated as the purchase price of the liquidated stock. The Court said, 276 U.S. at pages 236–237, 48 S.Ct. at page 245:

"It is true that if section 201(a) stood alone its broad definition of the term 'dividend' would apparently include distributions made to stockholders in the liquidation of a corporation—although this term, as generally understood and used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business, which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock. See Lynch v. Hornby, 247 U.S. 339, 344–346, 38 S.Ct. 543, 62 L.Ed. 1149; and Langstaff v. Lucas, D.C., 9 F.2d 691, 694.

"However, when section 201(a) and section 201(c) are read together, under the long-established rule that the intention of the lawmaker is to be deduced from a view of every material part of the statute, Kohlsaat v. Murphy, 96 U.S. 153, 159, 24 L.Ed. 844, we think it clear that the general definition of a dividend in section 201(a) was not intended to apply to distributions made to stockholders in the liquidation of a corporation, but that it was intended that such distributions should be governed by section 201 (c), which, dealing specifically with such liquidation provided that the amounts distributed should 'be treated as payments in exchange for stock' and that any gain realized thereby should be taxed to the stockholders 'as other gains or profits.' This brings the two sections into entire harmony, and gives to each its natural meaning and due effect. The Treasury Regulations correctly interpreted the act as making section 201(a) applicable to a distribution made by a going corporation to its stockholders in the ordinary course of business, and section 201(c) applicable to a distribution made to stockholders in liquidation of the corporation. And this is in accord with the rulings of the Board of Tax Appeals. Appeal of Greenwood, 1 B.T.A. 291, 295; Appeal of Chandler, 3 B.T.A. 146, 149."

The Hellmich case was, of course, concerned with the status of the distributed money in the hands of the distributee, as a dividend *vel non*. The Court's language, like the language of the statute, does not tell us whether the payment would have the nondividend status as regards the distributor-corporation, which is our problem in the instant case. The Treasury Regulation approved by the Court, Treasury Regulations 45 (1919 ed.) Art. 1548, is as broad as the statute and the Court's opinion. Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 82 L.Ed. 700, affirming 17 F.Supp. 191, 84 Ct.Cl. 193, was another case in which the status of the payment in the hands of the distributee-shareholder was involved, and the decision was that the broad definition of dividends in 115(a) was overridden by the specific provisions of 115(c).

The plaintiff says that the language of section 115(c) and of the judicial opin-

ions and of the executive regulations should be limited to the situation which, the plaintiff says, all of the users of the language had in mind, *viz.*, the status of the money in the hands of the distributee.

We now consider a comparable statutory situation in which the important question is the one involved in the instant case, viz., the status of the distribution from the standpoint of the distributing corporation. For the purpose of compelling the distribution of corporate profits so that they could be taxed in the hands of the shareholders, Congress in section 14 of the Revenue Act of 1936, supra, imposed a surtax on undistributed corporate profits. See Reed Drug Co. v. Commissioner, 6 Cir., 130 F.2d 288. In the section which became section 27(g) of the Internal Revenue Code of 1939, Congress provided a credit against the undistributed profits taxes for that part of a distribution in liquidation which was properly chargeable to earnings and profits. The section provided that such a payment should be "treated as a taxable dividend paid."

The Government says that if the plaintiff is right in its claims as to the universality of the definition of dividend in section 115(a) and the one-sidedness of the provision in the first sentence of section 115(c), limiting its capital gains treatment to the funds in the hands of the distributee, there would have been no reason for the insertion of section 27 (g). It says that, under the plaintiff's assumptions, the payments described in section 27(g) would of course have been dividends and would have been covered by the general language giving credit for dividends paid, without any need for being specially "treated as a taxable dividend paid." We think there is force in the Government's argument. We wish Congress had been equally specific and clear in its writing of section 26(h), with which we are here concerned.

In Helvering v. Credit Alliance Corp., 316 U.S. 107, 62 S.Ct. 989, 86 L.Ed. 1307,

the corporation had distributed accumulated earnings in a liquidation transaction and claimed the statutory credit for dividends paid. The Court said, 316 U.S. at page 110, 62 S.Ct. at page 991:

"Although a distribution in liquidation of earnings * * * does not constitute a dividend in the proper sense of the term,[1] subsection (f) [2] categorically declares that a liquidating distribution, to the extent it is composed of such earnings, shall, for the purposes of computing the dividends paid credit *'be treated as a taxable dividend paid.'*"

In St. Louis Co. v. United States, 3 Cir., 237 F.2d 151, certiorari denied 352 U.S. 1001, 77 S.Ct. 558, 1 L.Ed.2d 546, the corporation taxpayer claimed a dividends-paid credit for payments made in a distribution in liquidation. It had a deficit balance of accumulated earnings, but it had current earnings in the year of distribution. Under the definition of dividends in section 115(a) and the provisions of section 115(b), applied without consideration of section 115(c), its contention would have been right. But the Court held that the statutes made a distinction between distributions made by a going corporation and those made by a corporation in liquidation; that in the latter case the distributions in liquidation would be treated as dividends only if a statute such as section 27(g) specifically so provided, and that the taxpayer's situation did not comply with section 27(g) because it did not have accumulated earnings, but a deficit. In Shellabarger Grain Products Co. v. Commissioner, 7 Cir., 146 F.2d 177, the court gave similar treatment to a comparable situation.

Another instance of a "dividends paid" credit in the statutes is a section of a 1935 Act, 49 Stat. 908, which became section 121 of the Internal Revenue Code of 1939, which gave to banks and domestic insurance companies a tax deduction for dividends paid on their preferred stock. The Secretary of the Treasury

---

1. The Court here cited Hellmich v. Hellman, supra.

2. Section 27(g) of the Internal Revenue Code of 1939.

suggested that the bare language in the draft of the bill "any dividend paid" should be qualified by the parenthetical expression "(not including any distribution in liquidation)" and that change was made. It is fair to urge that the change was made because the general language "any dividend paid" woud have, without the qualification, included distributions made in liquidation, according to the definition of dividends in section 115(a).

The plaintiff urges that the purpose of Congress in providing the tax credit to public utility corporations for dividends paid on preferred stock will be, in part, frustrated if they are not allowed such credit for distributions in liquidation. It should be said that there is no evidence whatever that Congress put its mind on the particular question here involved. The plaintiff's argument is that the purpose of Congress was to give to public utility corporations which had financed themselves by issuing preferred stock the same tax status as those which had financed themselves by issuing bonds. The only payments discussed by the witnesses who spoke for 26(h) were the regularly recurring, cumulative, charges in the form of dividends on preferred stock which corporations which so financed themselves had to pay. The more esoteric questions of tax treatment of the issuance of bonds at a premium or at a discount, or their redemption at a premium or at a discount, and how similar tax treatment of preferred stock so issued or so redeemed could be provided for, were not raised. If they had been, they might well have confused the principal objective of the legislation, which was to get the tax credit for the normal recurring payments which all persons would recognize as dividends.

We get no real help from a consideration of the purpose of the legislation. We are obliged to conclude that Congress meant by the word dividends in section 26(h) whatever meaning the applicable statutes gave to the word in its proper context. We are, therefore, thrown back upon section 115 and its several subsections. As our discussion has indicated, section 115, and other legislation relating to analogous situations, give rise to conflicting inferences.

■ Our instant problem has not been decided by any court. The Supreme Court of the United States, and other courts which have adjudicated related problems, have said in effect that the general definition of dividends in section 115(a) is not applicable to distributions in liquidation; that to whatever extent they are to be treated as dividends, the justification must be found in section 115 (c) or elsewhere. We recognize that most, perhaps all, of such decisions could have been reached without the use of language as inclusive as that used by the courts. We cannot, however, ignore these expressions of opinion.

■ The question being so evenly balanced, on the basis of the text of the statutes and the logical inferences to be drawn from them, we are persuaded by the expressions of the other courts to the conclusion that the distribution here in question was not a dividend within the meaning of section 26(h).

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.