**PENNSYLVANIA POWER & LIGHT COMPANY**

v.

**UNITED STATES of America.**

**Civ. A. No. 29084.**

United States District Court
E. D. Pennsylvania.

Aug. 18, 1966.

Samuel K. White, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Norton Kern, Reid & Priest, New York City, for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., Burton G. Lipsky, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## SUR PLEADINGS AND PROOF

KIRKPATRICK, District Judge.

This is an action to recover income tax in the amount of $259,551.16 paid by the plaintiff for the year 1945. The case has been tried upon a stipulation of agreed facts by the Court sitting without a jury and is now before the Court for final disposition.

As part of a plan of recapitalization, the plaintiff's stockholders, on December 10, 1945, authorized the redemption of 164,390.38 shares of its preferred stock. The notice of redemption sent to the stockholders stated that the plaintiff called the outstanding preferred stock for redemption on January 9, 1946,* and

that the holders of such stock, upon surrender of their shares on any date subsequent to December 10, 1945, would be paid $110.00 per share plus "accrued unpaid dividends" to January 9, 1946.

On December 10, 1945, the recapitalization of the plaintiff was completed by the plaintiff's deposit of $18,372,477.51 with a trust company for distribution to the holders of the outstanding preferred stock. On that date the money for redemption of the preferred stock was paid in full and, so far as the plaintiff corporation was concerned, every event necessary to constitute a redemption of that stock had occurred.

In its income tax return for the year 1945, the plaintiff claimed a dividend paid credit of over $7,000,000. of which claim three items totalling $2,741,616.17 were disallowed by the Commissioner. These items were:

(a) $10 per share call premium .......... $1,643,903.80

(b) excess of stated value of preferred over amount received when such stock was issued .... $ 808,176.66

(c) accrued and unpaid dividends for the period subsequent to October 1, 1945 .... $ 289,535.71

It is undisputed that, of the total amount of the distribution, $2,057,637.21 came from earnings and profits.

Section 26(h) of the Revenue Code of 1939 provides for a credit in the case of a public utility in "the amount of dividends paid during the taxable year on its preferred stock." This section does not contain any definition of the term "dividend", for which Section 115(a) of the Code must be read. That section defines the term "dividend" as

---

* Although the notice which the plaintiff sent out to its preferred stockholders called the shares "for redemption" on January 9, 1946, it is quite clear that December 10, 1945, was the true date of redemption. That the plaintiff itself so considered it is shown by the facts that it brought this action for overpayment of income tax for the year 1945 and that it accorded the preferred stockholders the right to receive the full amount of the "dividend" at any time after December 10, 1945.

"any distribution made by a corporation to its shareholders * * * (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *", but by subsection (c) "amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock." The plaintiff agrees that the redemption of the preferred stock under the plan of recapitalization was a partial liquidation.

The payments made by the plaintiff and not allowed as a dividend paid credit by the Commissioner qualify for the credit if, and only if, they are to be treated as dividends within the meaning of Section 26(h) and not as payments in exchange for the stock (Section 115(c)). The correctness of the Commissioner's action disallowing these amounts is the only issue before the court.

█ Taking up first the plaintiff's claim in respect of the redemption premium of $10.00 per share, the status of payments of this kind has been before the courts on a number of occasions and in every case the premium has been held not to qualify as a dividend paid credit. See Atlantic City Electric Company v. United States, 142 Ct.Cl. 519, 161 F.Supp. 811; Kentucky Utilities Company v. Glenn (District Court, W.D. of Kentucky), 250 F.Supp. 265; Central & South West Corporation v. Brown (District Court, D. of Delaware), 249 F. Supp. 787.

At the argument, the plaintiff's attorney conceded that the Atlantic City case and the Central & South West Corporation case are not distinguishable upon their facts from the present case. In the last mentioned case the court, dealing with the plaintiff's argument that it was the intent of the statute to put dividends on preferred stocks of public utility companies in all respects on a parity with corporate bonds so far as tax deductibility was concerned, said,

"Plaintiffs' argument is based upon a misconception of the reason for permitting bond redemption premiums to be deducted. It is not because these premiums are treated as the equivalent of bond interest. The deduction is not allowed as interest under section 23(b) of the 1939 Code, but as an 'ordinary and necessary' expense of doing business under section 23(a) (1) (A). The allowance is understandable. The elimination or reduction of bond interest increases corporate profits, and the redemption premium is an expense incurred to accomplish the result. The elimination or reduction of dividends does not affect corporate profits one way or the other. It is simply a payment to an owner of the business. Conceptually, such a payment is not an 'expense' — 'ordinary or necessary' or otherwise. There is therefore no rational basis for analogizing a premium paid in redeeming preferred stock to a premium paid in redeeming bonds."

The effect of the consummation of the plan of recapitalization in this case was to cut the shareholders completely and finally from all beneficial interest in the corporation as of December 10, 1945, and all rights which they had to future earnings ceased to exist on that date.

The plaintiff does not seriously contend that Section 115(c), dealing as it does, specifically, with distribution in partial liquidation, is not controlling as against the general provisions of Section 115(a). The plaintiff endeavors to avoid the impact of Section 115(c) by an argument to the effect that that section was intended to provide for the treatment of money when it was received by the stockholders rather than when it was paid by the corporation. There is no reason to attribute such unexpressed intention to the statute—an intention which could have been expressed very easily and which is not needed in order to make a consistent scheme of taxation.

█ The item of $808,176.66, being the difference between the stated value of the preferred stock and the amount received by the corporation when such stock was issued, stands on no better

footing than the $10.00 per share premium, and the Commissioner's disallowance of it as a dividend paid credit was correct for the reasons which have been stated in connection with the premium. It, like the premium, amounted in substance to a bonus the amount of which was fixed or ascertained when the stock was originally issued but not paid until redemption.

As a third item the plaintiff claims a dividend paid credit for an amount equal to the dividends which would have accrued on the stock from October 1, 1945, to January 9, 1946. The Government concedes that dividends did accrue from October 1 to December 10, 1945, and that this amount is a proper dividend paid credit to the extent that it is chargeable to available earnings or profits. The money deposited by the plaintiff with its distributing agent on December 10 was sufficient to redeem all of the preferred stock in accordance with the plan of recapitalization. The deposit included an amount sufficient to pay what the notice called "dividends" to January 9, 1946, but since the stockholders could get their money upon turning in their shares for redemption without waiting until January 9, this additional money amounted simply to an additional premium. Looking at the substance of the redemption procedure rather than the words used, the plaintiff's characterization as "dividends" (in its notice to the preferred stockholders) of the monies to be paid them over and above the $10.00 premium was merely a convenient fiction to describe an additional premium or bonus added to the price to be paid for the stock. It cannot be said to have been earned. As has been pointed out, the preferred stockholders on December 10, 1945, ceased to have any beneficial interest in the stock except the right to receive a sum of money which had no relation to profits or earnings.

■ The Government urges the court to make a reduction in the amount of the credit for the reason that, at the time of redemption, the corporation paid out approximately $2,700,000. but had as available earnings only $2,000,000. The contention is that, since this is more or less a lump sum transaction, the amount of earnings used to pay the dividends should be apportioned between the available earnings and the additional money used. I think that this contention is sound and, therefore, hold that this item should receive its proportionate share of available earnings and profits. Thus the taxpayer's credit would equal that proportion of the qualifying payment which the total of available accumulated earnings and profits bears to the total distribution made.

An order for judgment in accordance with the foregoing opinion may be submitted.