394 F.2d 631
 KENTUCKY UTILITIES COMPANY, Plaintiff-Appellee,
v.
Seldon R. GLENN and William M. Gray, Defendants-Appellants.
OLD DOMINION POWER COMPANY, Plaintiff-Appellee,
v.
Seldon R. GLENN and William M. Gray, Defendants-Appellants.
KENTUCKY UTILITIES COMPANY, Plaintiff-Cross-Appellant,
v.
Seldon R. GLENN and William M. Gray, Defendants-Cross-Appellees.
 Nos. 17438-17440.
 United States Court of Appeals Sixth Circuit.
 May 7, 1968.
 
 James S. Welch, Louisville, Ky., for Kentucky Utilities and Old Dominion power; Malcolm Y. Marshall, Ogden, Robertson & Marshall, Louisville, Ky., on brief.
 William A. Friedlander, Atty., Dept. of Justice, Washington, D. C., for Seldon R. Glenn and William M. Gray; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Garney, Attys., Dept. of Justice, Washington, D. C., on brief; Ernest W. Rivers, U. S. Atty., Louisville, Ky., of counsel.
 Before EDWARDS and CELEBREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.
 EDWARDS, Circuit Judge.
 
 
 1
 These are three entirely separate tax cases between the same parties raising somewhat complex issues of fact and law. The corporate parties in these tax cases are Kentucky Utilities Co., a major private supplier of electrical power in Kentucky and adjoining states, henceforth to be referred to as KU, and Old Dominion Power Co., a wholly-owned subsidiary of KU and engaged in the same business. Old Dominion is involved only in the second issue pertaining to social security taxes. The two named individual respondents are nominal defendants representing the Internal Revenue Service.
 
 
 2
 The issues will be discussed under three headings: Generator Damage, Social Security Tax Deductions, and Preferred Stock Premiums and Dividends.
 
 GENERATOR DAMAGE
 
 3
 KU claimed a right to deduct the sum of $44,486.77 on its 1953 corporate tax return, either as an uninsured loss or an ordinary and necessary business expense.[1] This was the sum which KU did not recover out of approximately $150,000 of damage to a turbo generator, located at Pineville, Kentucky, which was partially destroyed by accident on September 12, 1951. The turbo generator had been insured with Lloyds of London for $200,000, subject to a $10,000 deductible provision.
 
 
 4
 Lloyds never disputed its coverage of the loss, but did insist on its right of subrogation to KU's rights against Westinghouse, the supplier of the turbo generator. Westinghouse disputed any liability under its warranty of the generator.
 
 
 5
 Ultimately, as between the three disputing parties, Westinghouse paid $65,550.93 of the total cost of repairs; Lloyds paid $37,500, relinquishing any right of subrogation against Westinghouse, and KU assumed responsibility for the remaining $44,486.67 worth of damage.
 
 
 6
 The District Judge held that KU had sustained an uninsured loss of $10,000 because of the deductible feature of the policy. 250 F.Supp. 265. He found as a fact:
 
 
 7
 "6. For business reasons, K-U did not want any litigation brought against Westinghouse. Moreover, because of possible difficulty in retaining insurance of this character on its equipment, K-U did not want Lloyds to pay all of the loss except the $10,000.00 deductible under the policy.
 
 
 8
 * * * * * *
 
 
 9
 "8. K-U voluntarily assumed $34,486.67 of the cost of repairs to the generator to protect Westinghouse from suit by Lloyds and to avoid difficulty in obtaining insurance with Lloyds. The expenditure of $34,486.67 in this manner does not constitute a loss or an ordinary and necessary business expense."
 
 
 10
 This record convinces us that the District Judge's quoted findings of fact are not clearly erroneous. KU's loss over and above the $10,000 allowed by the District Judge was not an "uninsured loss." Sam P. Wallingford Grain Corp. v. Commissioner of Internal Revenue, 74 F.2d 453 (10th Cir. 1934).
 
 
 11
 Nor does KU's voluntary assumption of the loss for the reasons found by the District Judge seem to be either "necessary" or "ordinary" within the meaning of the tax statute. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933).
 
 
 12
 On this issue we affirm the judgment of the District Court.
 
 SOCIAL SECURITY TAX DEDUCTIONS
 
 13
 The second case involves suits by KU and Old Dominion to recover taxes paid when the Commissioner determined that both companies had elected to capitalize social security taxes paid on construction work in KU's tax years 1947 through 1953, and Old Dominion's tax years 1949 through 1951.
 
 
 14
 Under the 1939 Internal Revenue Code, sections 23(a) and 23(c), social security taxes are deductible as expenses. Under section 24(a) (7) of the same Code, however, a taxpayer may capitalize such taxes "if the taxpayer elects in accordance with such regulations" to do so. The controlling regulation, Treas.Reg. 111 § 29.24-5(c) (1943), provides for the taxpayer to file a "statement" making the election.
 
 
 15
 It is clear that both taxpayers up to 1951 treated the social security taxes in the tax returns which they filed as if they had elected to capitalize such taxes.
 
 
 16
 The taxpayers here place primary reliance upon their claim that no formal statement of election to capitalize was ever made by either company. They filed amended tax returns within the time limits allowed by statute, along with "statements" electing to deduct these taxes as expenses.
 
 
 17
 The government relies upon a statement made by each company clearly electing to deduct certain other taxes, while listing the social security taxes on unfinished construction and not deducting them. It is the government's position that these statements (as to other taxes) allowed the inference that an election had been made as to the social security taxes.
 
 
 18
 The District Judge took the point of view that the Regulation called for a formal statement as to these tax items. In this regard he relied upon the language of the Regulation:
 
 
 19
 "(c) Manner of exercising election. — If the taxpayer elects to capitalize an item or items under this section, such election shall be exercised by filing with the original return a statement for that year indicating the item or items (whether with respect to the same project or to different projects) which the taxpayer elects to treat as chargeable to capital account (either as a component of original cost or other basis, for the purposes of section 113(a), or as an adjustment to basis, for the purposes of section 113(b) (1) (A))." Treas.Reg. 111 § 29.24-5(c) (1943).
 
 
 20
 The District Judge found as a fact that neither KU nor Old Dominion had filed any formal statement of election. He concluded as a matter of law that neither company had made an election, and hence, that they were within their rights in claiming the deductions on their amended returns.
 
 
 21
 This view of the Regulation, however, does not take into account the fact that the language of the Regulation requires the taxpayer to exercise the option granted "by filing with the original return a statement for that year" listing the items he wishes to capitalize. We believe this language was designed to prohibit delay in the exercise of the option and to prohibit the withholding of any statement so as to permit the later exercise of the option.
 
 
 22
 Two other facts are relevant to our decision. On the "original" returns the taxpayers did elect to deduct as expenses certain ad valorem taxes on unfinished construction, making specific reference to the Regulation cited above. Further, taxpayer's witness Anderson testified:
 
 
 23
 "Q. Can you tell us how the company treated payroll and social security taxes on its books for all the years prior to 1952?
 
 
 24
 "MR. MARSHALL: You relate that question to the construction work?
 
 
 25
 "MR. HERTZ: Yes.
 
 
 26
 "THE WITNESS: You say all the years, you mean back to the inception of the company?
 
 
 27
 "Q. As far back as you know anything about?
 
 
 28
 "A. I feel rather certain at least for the period from 1938 when I came with the company up until 1952, the year you asked, on the books of the company, the company had capitalized a portion of the social security taxes which was applicable to the construction projects.
 
 
 29
 "Q. So we can straighten out that part about a portion, the fact is, is it not, they had capitalized all of these kind of taxes dealing with unfinished construction?
 
 
 30
 "A. Yes, that is what I meant about being applicable to construction.
 
 
 31
 "Q. Now, sir, the tax returns filed by the company for the years 1947, '48, '49, '50 and '51 agreed in that respect with the treatment of these same amounts on the books of the corporation, did they not?
 
 
 32
 "A. The tax returns show at least we did not claim these items as taxes.
 
 
 33
 "Q. Yes. In that connection, I show you the 1947 tax return for Kentucky Utilities Company and ask you whether the schedules contained here were prepared and filed with the return?
 
 
 34
 "A. Yes, I am sure these schedules were prepared and filed as part of the return.
 
 
 35
 "Q. So that one looking at that return would have more to go on with respect to the social security taxes than the fact that no deductions had been claimed on the face of the return, would he not?
 
 
 36
 "A. It would certainly give a great deal of strength to that position.
 
 
 37
 "Q. Specifically, it shows how much of each kind of tax has been treated as a capital expenditure and how much has not been so treated?
 
 
 38
 "A. Insofar as the books are concerned, yes."
 
 
 39
 We believe the District Judge was in error in concluding as a matter of law that the instant taxpayers, having failed to file a formal statement of election, retained the right under the Regulation and these facts to make a subsequent election by the filing of a formal statement with their amended tax returns. We do not now pass on circumstances where ignorance or mistake on the part of taxpayers might serve as reasonable grounds for asserting that the option given by section 24(a) (7) of the Internal Revenue Code of 1939 had not been intelligently exercised or waived in the filing of an original tax return. We simply hold that this case presents no such exceptional facts.
 
 
 40
 As we read this record, herein knowledgeable taxpayers are seeking to give retroactive effect for a matter of five years to a change in accounting policy. We believe the Regulation specifically prohibits this attempt to exercise the statutory option retroactively.
 
 
 41
 On this issue, the judgment of the District Court is reversed.
 
 PREFERRED STOCK PREMIUMS AND DIVIDENDS
 
 42
 In connection with a new issue of 4¾% preferred stock, KU called for redemption of prior issues of 6% and 7% preferred stock. KU was required by the terms of the stock issues to pay call premiums of $10 per share on the 6% preferred stock and $5 per share on the 7% preferred stock.
 
 
 43
 KU sought to claim tax credits for these payments under section 26(h) of the Internal Revenue Code of 1939, 26 U.S.C. § 26(h) (Supp. V, 1941-46). When the Commissioner disallowed these credits, KU paid the taxes assessed and sued for refund. The District Judge found that: "[T]he payment of the cash premiums by K-U in furtherance of its refinancing program does not constitute the payment of dividends within the meaning of Section 26(h)." This is the first, and in dollar terms by far the largest, of the issues under this heading.
 
 
 44
 It appears that the District Judge's view of the law on this subject is supported by a considerable amount of precedent. Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544 (1928); Atlantic City Electric Co. v. United States, 161 F.Supp. 811, 142 Ct.Cl. 519, cert. denied, 358 U.S. 834, 79 S.Ct. 56, 3 L.Ed.2d 71 (1958); Idaho Power Co. v. United States, 161 F.Supp. 807, 142 Ct.Cl. 534, cert. denied, 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958); Central & South West Corp. v. Brown, 249 F. Supp. 787 (D.Del.1965); General Public Utilities Corp. v. United States, 58-2 U.S. Tax Cas. ¶ 9755 (Ct.Cl.), cert. denied 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69 (1958).
 
 
 45
 While the first case cited (Hellmich) is not conclusive as to the definition of "dividend" for purposes of the instant case, the other cases are directly in point. They, like the government in this appeal, rely upon section 115 of the Internal Revenue Code of 1939 and hold that the premiums paid in exchange or redemption of public utility preferred stock are moneys paid "in partial liquidation," and hence, are not "dividends paid" entitled to credit against income.
 
 
 46
 This reasoning leaves something to be desired, since in most such transactions (as in this one) what is actually involved is simply the substitution of one scheme of financing for an older (and generally more expensive) one.
 
 
 47
 We believe under the facts involved in this case that the call premiums on the old preferred stock were actually sums of money which KU was required to pay for the use of money. They certainly were not voluntary payments, since the premiums were established by the terms of the original preferred stock indenture. Call premiums on corporate bonds have been held to be deductible as an ordinary and necessary business expense in a variety of corporate finance transactions. Baltimore Steam Packet Co. v. United States, 180 F.Supp. 347 (Ct.Cl.1960); Roberts & Porter, Inc. v. Commissioner of Internal Revenue, 307 F.2d 745 (7th Cir. 1962) (Int.Rev.Code of 1954). See Great Western Power Co. v. Commissioner of Internal Revenue, 297 U.S. 543, 56 S.Ct. 576, 80 L.Ed. 853 (1936) (Revenue Act of 1924); Helvering v. California Oregon Power Co., 64 App.D.C. 125, 75 F.2d 644 (1935) (Revenue Act of 1926).
 
 
 48
 Preferred stock issues are a major financing device employed by public utilities. Such issues are employed frequently where bonds would be used in other corporate financing. This is true largely because of the great volume of borrowed capital required by public utility industries. Hearings on Revenue Revision of 1942 Before the House Comm. on Ways and Means, 77th Cong., 2d Sess., vol. 1, at 199-205 (1942); Id. vol. 3, at 3327-31; Hearings on H.R. 7378 Before the Senate Comm. on Finance, 77th Cong., 2d Sess., vol. 1, at 159-64 (1942).
 
 
 49
 Generally in such issues (as is true here) preferred stockholders have no voting rights or actual company control or other indicia of ownership absent default upon dividend payments.
 
 
 50
 But the form of the instrument designates the holder as owner of stock rather than as a creditor. And generally, of course, payments made by a corporation to its owners out of accumulated profits are not considered to be ordinary and necessary business expenses. This historically has accounted for the difference in tax treatment accorded preferred stock dividends and expenses as compared to interest and expense in bond issues.
 
 
 51
 The strong probability is that we deal here with a problem which Congress has never considered and on which it has never spoken. The frustrating attempts to reconcile call premiums on preferred stock with section 26(h) treatment of "dividends" or section 115(c) treatment of "distributions" in complete or partial liquidation run afoul of the simple fact that call premiums are really neither. And this is equally true whether the definitions are attempted by normal usage of language or the technical terminology of tax statutes.
 
 
 52
 There is, we believe, no real reason why call premiums on public utility preferred stock such as that involved in the instant case should not be made deductible. The trouble is that Congress has not done so.
 
 
 53
 It appears to be clear that no payments on preferred stock issues of public utilities were entitled to income tax credits until 1942. In that year section 26(h) was adopted. 56 Stat. 830 (1942). The language of that section applicable to our present controversy provides:
 
 
 54
 "§ 26. Credits of corporations.
 
 
 55
 "In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax —
 
 
 56
 * * * * * *
 
 
 57
 "(h) Credit for dividends paid on certain preferred stock — (1) Amount of credit.
 
 
 58
 "In the case of a public utility, the amount of dividends paid during the taxable year on its preferred stock. For the purposes of the credit provided in this subsection the amount of dividends paid shall not include any amount distributed in the current taxable year with respect to dividends up-paid and accumulated in any taxable year ending prior to October 1, 1942." 26 U.S.C. § 26(h) (Supp. V, 1941-46) (Int. Rev. Code of 1939).
 
 
 59
 The proponents of this measure sought to have dividends paid by public utilities on preferred stock issues treated like interest on corporate bonds.
 
 
 60
 It appears, however, from the record of the hearings on the Revenue Revision of 1942 that the proponents of public utility tax relief never sought to secure treatment of preferred stock call premiums (or other expenses) as tax credit items. Presumably, hoping to acquire the hide, they did not think it wise to ask Congress to let the tail go too.
 
 
 61
 We agree with the disposition of this issue arrived at by the District Judge and by the other courts whose opinions we have cited. Fundamentally, however, we do so because when Congress devised a tax credit for preferred stock "dividends," it was not asked to and did not include in such a credit other preferred stock financing expenses such as call premiums.
 
 
 62
 It is standard tax law that income deductions and tax credits are narrowly construed. And the taxpayer has the burden of showing he comes within the provision relied upon. 1 J. Mertens, The Law of Federal Income Taxation § 3.08 (W. Oliver rev. 1962). KU fails to bear the burden of convincing us that its call premiums were entitled to tax credit treatment under section 26(h). The case stated here appears to us to be one for consideration by Congress.
 
 
 63
 As to this issue, we affirm the judgment of the District Court.
 
 
 64
 We can be more succinct about the other issues presented under this same heading. The second and third issues pertain to KU's claim that it is entitled to claim as a dividends paid credit, dividends which had accrued on a new issue of 4 ¾% preferred stock, some of which was issued in exchange for the old preferred stock, and some of which was sold through underwriters. The District Judge allowed $101,104.64 of the dividends on the new stock which were paid to old 6% and 7% stockholders who exchanged their old preferred stock for the new, but he disallowed $21,195.74 of the first regular dividend on the new preferred stock which was sold to underwriters.
 
 
 65
 The government's contention is that these dividend payments had been completely offset by exactly identical sums deducted from the call premium otherwise due the redeeming stockholders, or added to the sale price offered by the underwriters. In effect the government contends that this whole transaction was a wash.
 
 
 66
 We agree with the government's position. This record shows that these dividends were paid in form but not in fact. Central & South West Corp. v. Brown, 249 F.Supp. 787 (D.Del.1965). This requires reversal of the District Judge's allowance of the $101,104.64 as a dividend paid credit in relation to new preferred stock issued in exchange for old preferred stock. The District Judge's disallowance of credit on the accrued dividends sold to underwriters is affirmed.
 
 
 67
 In summary of the opinion above, the judgment of the District Court as to generator damage is affirmed. The judgment of the District Court as to Social Security taxes is reversed. The judgment of the District Court disallowing dividend paid credit as to call premiums is affirmed. The disallowance of $21,195.74 of dividend paid credit on new preferred stock sold to underwriters is affirmed; the allowance of $101,104.64 dividend paid credit on new preferred stock issued in exchange for old issues is reversed.
 
 
 
 Notes:
 
 
 [1]
 "§ 23. Deductions from gross income
 "In computing net income there shall be allowed as deductions:
 "(a) Expenses.
 * * * * *
 "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.
 * * * * *
 "(f) Losses by corporations.
 "In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. §§ 23(a), (f) (1952). (Int.Rev.Code of 1939).