## COMMISSIONER OF INTERNAL REVENUE v. OWENS (two cases).

### Nos. 7079, 7080.

Circuit Court of Appeals, Fifth Circuit.

March 17, 1934.

Separate petitions by the Commissioner of Internal Revenue to review a decision of the United States Board of Tax Appeals modifying action of the Commissioner of Internal Revenue fixing deficiencies in the income taxes of J. T. Owens and Mrs. J. T. Owens for the year 1929.

Frank J. Wideman, Asst. Atty. Gen., Milford S. Zimmerman, Sewall Key, and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and B. M. Coon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Eustis Myres, of Dallas, Tex., Brewster, Ivins & Phillips, of Washington, D. C., and Joseph B. Brennan, of Atlanta, Ga., for respondents.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The respondents are husband and wife, in marital partnership under the Texas community laws. Their income taxes for 1929 are in dispute because of a transaction in bank stock during that year. They owned 2,165 shares of stock in North Texas National Bank which cost them $51,960. Their bank consolidated with Republic National Bank & Trust Company under two agreements simultaneously concluded by the directors of the two banks and ratified by their stockholders pursuant to 12 USCA § 33. One of the agreements provided for a consolidated corporation under the charter and the name of the Republic National Bank & Trust Company, with a capital stock of $4,000,000 divided into 200,000 shares of par value $20 each, of which 175,000 shares were allotted to shareholders of the Republic Bank and 25,000 to shareholders of the North Texas Bank, being one-half share for each share in the latter bank. All assets of each corporation were to become the property of the consolidated corporation, and the liabilities of each were to be assumed by it. The other agreement provided that, in order to expedite and conserve the interests of each of the parties while the consolidation was being consummated, the North Texas Bank does assign, set over, and deliver to the Republic Bank such of its assets as will protect the latter against its assumption of the liabilities of the former, exclusive of liability to shareholders; and as to the liabilities of North Texas Bank to its shareholders the Republic Bank should take over the remaining assets at a basis which would yield each shareholder in the North Texas Bank $47.50 per share, but it was understood and agreed that the shareholders on or before November 25, 1929, should have the right and privilege of subscribing to and purchasing the 25,000 shares allotted to them in the consolidation contract on a basis of $65 per share. The consolidation contract was expressly referred to for details. Pursuant to these agreements the respondents turned in their 2,165 shares of stock in the North Texas Bank, receiving 1,082 shares of the consolidated stock at $65 per share and $32,507.50 in cash. The North Texas Bank's assets as valued in the consolidation showed a surplus for each share of its stock of $6.086 earned since its organization in 1925. It does not appear what other shareholders in the North Texas Bank did or got. The Board of Tax Appeals held that there was an exchange of stock for stock and money within the meaning of section 112 (c) (1) of the Revenue Act of 1928, 26 USCA § 2112 (c) (1), so that so much of the cash received as represents the surplus of the North Texas Bank is to be treated as a dividend not subject to normal tax while the remainder is

fully taxable gain realized in the transaction. The Commissioner contends that all is gain.

The Board is right. Section 112 (a), 26 USCA § 2112 (a), states the general rule that gain or loss on exchanges of property is to be recognized in assessing taxes. Subsection (b) in five paragraphs states exceptions to that rule. Paragraph (3) excepts from the rule exchanges of stock for stock in corporate reorganizations. Subsection (c) (1), so far as here applicable, qualifies subsection (b) (3), 26 USCA § 2112 (b) (3), by saying that, if stock is exchanged for stock plus money or other property, then gain not exceeding the money or the fair value of the other property is to be recognized. Subsection (c) (2), 26 USCA § 2112 (c) (2), then qualifies that by providing: "If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend," so much of the gain as does not exceed the shareholder's part in the undistributed earnings of his corporation is to be taxed as a dividend. By section 112 (i) (1), 26 USCA § 2112 (i) (1), the term "reorganization" includes merger or consolidation. It is clear that there was a merger or consolidation of the two banks, and therefore a reorganization. The second agreement was in aid of the first, and whatever was done under the second was in pursuance of a plan of reorganization and a step in its accomplishment. There seems to be an option in the second agreement to the shareholder in the North Texas Bank not to take any new stock, but to receive all cash. Such an option always exists for a dissenting shareholder under 12 USCA § 33 in a consolidation of national banks. It does not appear that any shareholder of the North Texas Bank received all cash, and we have no occasion to determine the status of such a one. These respondents took their share of the new stock as allotted in the contract of reorganization at a value which more than absorbed their capital investment, and continued it in the reorganized business. The cash which they received was all a gain from their investment taxable under section 112 (c) (1), 26 USCA § 2112 (c) (1), but so much of it as might before consolidating have been declared by their corporation as an ordinary dividend out of its profits is by subsection (c) (2), 26 USCA § 2112 (c) (2), to be so taxed. It is true that the money was not distributed by the North Texas Bank, and thus was not literally a dividend of that bank. But the statute speaks of a distribution which "has the effect of the distribution of a dividend." This pro rata payment to all stockholders of the North Texas Bank, whether assenting or dissenting, certainly has that effect.

Petitions denied.