**Mandell SHIMBERG, Jr. and Elaine F. Shimberg, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 74–440–Civ–T–H.**

United States District Court, M. D. Florida, Tampa Division.

July 1, 1976.

Sherwin P. Simmons, Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., for plaintiffs.

Gary R. Trombley, Asst. U. S. Atty., Tampa, Fla., Rodger M. Moore, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## ORDER

HODGES, District Judge.

The sole issue for determination in this proceeding is whether cash in the amount of $417,449 received by the Plaintiff, Mandell Shimberg, Jr.,[1] on December 9, 1970 in connection with the merger of LaMonte-Shimberg Corporation into MGIC Investment Corporation is taxable as proceeds from the sale of a capital asset, entitled to long-term capital gain treatment for federal income tax purposes, as contended by the Plaintiffs; or, whether the cash proceeds are taxable as a dividend or ordinary income as contended by the Defendant.

The issue has been submitted to the Court for determination upon stipulated facts contained in the parties' pretrial stipulation. The following is a summary of the facts:

(a) LaMonte-Shimberg Corporation ("LSC") was incorporated under the laws of the State of Florida on September 28, 1959. LSC was, at all material times, engaged primarily in the business of building and selling single family homes. The Plaintiff was its president and chief executive officer.

(b) The Plaintiff was the majority stockholder of LSC, owning, directly or indirectly, approximately 90,517 shares or sixty-six per cent (66%) of its 135,521 issued and outstanding shares of common stock. The remainder of the stock of LSC was owned by nineteen unrelated stockholders.

(c) MGIC Investment Corporation ("MGIC") is a corporation organized and existing under the laws of the State of Delaware, having been incorporated in

---

1. The Plaintiff, Elaine F. Shimberg, is involved in this proceeding only because she filed a joint federal income tax return with Mandell Shimberg, Jr. for the calendar year 1970. Unless otherwise expressly indicated, all references herein to the "Plaintiff" shall refer solely to Mandell Shimberg, Jr.

that state in 1968. MGIC was, at all material times, a "publicly held" corporation, the stock of which was traded on the New York Stock Exchange, engaged through its various subsidiaries primarily in the financial guaranty business, insuring lenders and lessors against credit and rental losses in the business of real estate financing.

(d) On November 9, 1970, 6,204,448 shares of MGIC common stock were issued and outstanding, being held at that time by 5,191 stockholders of record. The stock ownership of MGIC did not materially change during the period from November 9, 1970 through December 9, 1970.

(e) On September 18, 1970, MGIC and LSC executed a Plan and Agreement of Merger (the "Agreement"), pursuant to which LSC was to be merged into MGIC in a transaction meeting the requirements of the applicable provisions of the Delaware General Corporation Law and the Florida Corporation Law. The Agreement contemplated that LSC would be merged into MGIC in a transaction qualifying as a "reorganization" under the provisions of Section 368(a)(1)(A) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 368.

(f) On December 9, 1970, LSC was merged into MGIC, the surviving corporation, and the separate existence of LSC was terminated. The merger was consummated in accordance with the applicable laws of the states of Florida and Delaware.

(g) In connection with the merger, the stockholders of LSC received ratably, in exchange for all of their LSC stock, 32,-132 shares of MGIC common stock outright, 32,132 shares of MGIC common stock in escrow, and cash in the total amount of $625,000. Specifically, the Plaintiff received in exchange for his LSC stock, 21,461 shares of MGIC common stock outright, 21,461 shares of MGIC common stock in escrow, and cash in the amount of $417,449. The undis-

tributed earnings and profits of both corporations, immediately prior to December 9, 1970, was in excess of $625,000 each.

(h) On their joint federal income tax return for 1970, the Plaintiffs reported the cash received in connection with the merger as long-term capital gain. Upon audit and examination of the return, the Internal Revenue Service determined that the cash received by the Plaintiff in connection with the merger was taxable as a dividend or ordinary income. The Commissioner of Internal Revenue assessed a federal income tax deficiency against the Plaintiffs in the amount of $125,883. The amount of the deficiency, and interest in the amount of $15,664.67, was timely paid by the Plaintiffs on June 19, 1973. Additional interest in the amount of $505.26 was paid by the Plaintiffs on August 17, 1973.

(i) On January 4, 1974, the Plaintiffs timely filed a claim for refund with respect to the amount of the deficiency and interest paid. On May 8, 1974, the Plaintiffs were notified by the Commissioner of Internal Revenue that their claim for refund was disallowed in full.

(j) This suit for recovery of the amount of the deficiency, and all interest paid, was commenced on August 8, 1974.

Section 354 of the Code, 26 U.S.C. § 354, provides that no gain or loss shall be recognized for tax purposes if, pursuant to a plan of reorganization, stock and securities in a corporation are exchanged solely for stock or securities in another corporation which is a party to the reorganization. Section 368(a)(1)(A) of the code, 26 U.S.C. § 368(a)(1)(A), defines the term "reorganization" to include a "statutory merger," that is, a merger effected pursuant to the laws of one or more states. Accordingly, the Internal Revenue Code permits a stockholder to dispose of stock owned by him in a statutory merger free of federal income tax consequences so long as he receives as consideration only stock or securities of the other corporation participating in the merger.

However, most state laws, including those of Florida and Delaware,[2] permit consideration other than stock or securities to be utilized in effecting a statutory merger. The additional consideration, commonly referred to as "boot," may consist of cash or any property other than the stock or securities of the acquiring corporation.

The receipt of "boot" in connection with a statutory merger does not make the transaction completely taxable; rather, it has the effect of making the ordinarily tax-free transaction partially taxable. Section 356(a) of the Code, 26 U.S.C. § 356(a), provides:

"§ 356. Receipt of additional consideration

(a) Gain on Exchanges.—

   (1) Recognition of gain.—If—

     (A) section 354 . . . would apply to an exchange but for the fact that

     (B) the property received in the exchange consists not only of property permitted by section 354 . . . to be received without the recognition of gain but also of other property or money,

then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

   (2) Treatment as Dividend.—*If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend*, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be

treated as gain from the exchange of property." [Emphasis added.]

Accordingly, in statutory mergers involving the receipt of "boot," the recipients are required to recognize gain to the extent of the value of the "boot." The question is whether it is taxable as proceeds from the sale of the capital asset or is taxable as a dividend, and the answer turns on whether the payment and receipt of the "boot" ". . . has the effect of the distribution of a dividend . . ." within the meaning of Section 356(a)(2). That, of course, is the ultimate issue in this case.

Based upon the Supreme Court decision in *Commissioner of Internal Revenue, v. Bedford's Estate*, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945), the Internal Revenue Service took the position for many years that, in situations where the taxpayer continued as a stockholder after a reorganization exchange, Section 356(a)(2) "automatically" treated "boot" recognized pursuant to Section 356(a)(1) as dividend income to the extent of the distributing corporation's earnings and profits. See, Rev.Rul. 56–220, 1956–1 C.B. 191. The so-called "automatic dividend" rule was criticized by the commentators, however, and the more recent cases[3] tended to abandon the rigidity of that approach in favor of a more flexible analysis similar to that employed under Section 302(b)(1) (relating to dividend equivalence incident to a stock redemption.)

Accordingly, following the decision in *Wright v. United States*, 482 F.2d 600 (8th Cir. 1973), the Internal Revenue Service has apparently abandoned the "automatic dividend" application of *Bedford* and has accepted the reasoning that, in determining whether "boot" has the effect of a distribution of a dividend for purposes of Section 356(a)(2), the standard of "essential dividend equivalency" under Section 302(b)(1) should be applied. (See Rev.Rul. 74–515,

---

**2.** Sections 608.20 and 608.21, Florida Statutes; Title 8, Section 252, Delaware General Corporation Law.

**3.** *King Enterprises, Inc. v. United States*, 418 F.2d 511, 189 Ct.Cl. 466 (1969); *Hawkinson v.*

*Commissioner of Internal Revenue*, 253 F.2d 747 (2d Cir. 1956); *Ross v. United States*, 173 F.Supp. 793, 146 Ct.Cl. 223 (1959); *Idaho Power Co. v. United States*, 161 F.Supp. 807, 142 Ct.Cl. 534 (1958).

I.R.B. No. 1974–43, p. 7; Rev.Rul. 74–516, I.R.B. No. 1974–43, p. 9).[4]

In *United States v. Davis*, 397 U.S. 301, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970), the leading authority interpreting and applying Section 302(b)(1), the Supreme Court held that in deciding whether a payment in redemption of stock "is not essentially equivalent to a dividend," within the meaning of that section, the inquiry should be "whether the redemption could be characterized as a sale" (397 U.S. at 311, 90 S.Ct. at 1047); and the answer to that question, in turn, should not be sought by examining the business motives underlying the transaction, but by ascertaining whether the redemption resulted "in a meaningful reduction of the shareholder's proportionate interest in the corporation" (397 U.S. at 313, 90 S.Ct. at 1048).

Thus, in *Wright v. United States, supra,* the Eighth Circuit applied the *Davis* "meaningful reduction" standard in resolving the same issue of law presented by this case under Section 356(a)(2), concentrating in particular upon the taxpayer's reduction in voting power in the surviving corporation and concluding that the "boot" he received in addition to a stock-for-stock exchange arising out of a corporate consolidation did not have "the effect of a distribution of a dividend" under Section 356(a)(2).[5]

■ In the final analysis, therefore, the issue in this case under Section 356(a)(2), as to whether the payment of the "boot" had the "effect of the distribution of a dividend," must be treated as an ultimate issue of fact to be resolved by an examination of the total transaction and its resulting effect upon the interests of the taxpayer as a stockholder. Stated more precisely the factual question is whether sale or dividend characteristics predominate in the transaction, regardless of the underlying motives of the parties; and the test to be applied in answering that question is whether the transaction resulted "in a meaningful reduction of the shareholder's proportionate interest in the corporation."

■ Prior to the merger in this case, Plaintiff was the president, chief executive officer and owner (directly or indirectly) of approximately 66% of the stock of LSC. As a result, under Florida law he could effectively control the corporation. Subsequent to the merger the Plaintiff owned (directly and indirectly) less than 1% of the outstanding common stock of MGIC, a large publicly-held corporation whose stock was traded on the New York Stock Exchange and was held by approximately 5,200 shareholders. His former rights to direct the affairs of LSC were extinguished. His interest in MGIC afforded him no control whatsoever over the destiny of the large national corporation. No longer was he the major "owner" of a successful local company operating in several Florida counties. He was then the holder of a miniscule percentage of the outstanding stock of a huge, publicly-held corporation. It is clear that the merger resulted in a radical change and meaningful reduction in the nature of the Plaintiff's interest in the continuing business. The

---

4. "The question whether a distribution in redemption of stock of a shareholder is not essentially equivalent to a dividend under Section 302(b)(1) *depends upon the facts and circumstances of each case.*" Tres. Reg. § 1.302–2(b). [Emphasis supplied]

5. In resolving the sale-or-dividend issue under Section 356(a)(2) the Court in *Wright* first devoted considerable space in its opinion to an analysis of the reorganization under the so-called "safe harbor" or "substantially disproportionate redemption" provisions of Section 302(b)(2). In so doing the Court viewed the transaction involved as one in which only stock was issued, followed by a fictional redemption by the acquiring corporation of a portion of its newly issued stock for the "boot." The Court concluded, nevertheless, that the "boot" would not qualify as the proceeds of a "redemption" under the mathematical limitations of Section 302(b)(2), and then turned its attention to the general, dividend equivalence test of Section 302(b)(1) to resolve the parallel issue presented under Section 356(a)(2). Thus, to the extent the opinion might suggest application of Section 302(b)(2) in a reorganization context governed by Section 356(a)(2), it is a dubious dictum and need not be pursued here despite Plaintiff's contention that his resulting stock position in MGIC would meet the requirements of Section 302(b)(2) should that analysis be made in this case.

net effect of the transaction was a sale by the Plaintiff and the other LSC stockholders of their LSC stock to MGIC for cash and marketable securities in a publicly owned corporation.[6]

The Court concludes that the cash or "boot" received by the Plaintiff on December 9, 1970, in connection with the merger of LSC into MGIC did not have "the effect of the distribution of a dividend" within the meaning of Section 356(a)(2) and is taxable as proceeds from the sale of a capital asset. It follows that the Plaintiffs are entitled to recover and the parties are directed, pursuant to paragraph 6(t) of the pre-trial stipulation, to submit an agreed form of judgment within forty days from the date hereof.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

**6.** The Defendant, in apparent reliance upon that portion of the *Wright* opinion discussed in the preceding footnote, contends that the scope of the inquiry should be a narrow one, i. e., that the "meaningful reduction" test should not be applied on a before and after basis, but should be restricted to a post merger comparison between what the taxpayer's interest in the resulting consolidated corporation would have been with and without the boot payment. *Wright* does not support such a myopic view of the consequences of the transaction in determining Section 302(b)(1) "dividend equivalence" in resolving the parallel issue presented under Section 356(a)(2). The other authorities cited by the Defendant, namely *King Enterprises, Inc. v. United States*, 418 F.2d 511, 189 Ct.Cl. 466 (Ct.Cl. 1969), and *Ross v. United States*, 173 F.Supp. 793, 146 Ct.Cl. 223 (1959), cert. denied, 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113 (1959), are inapposite on their facts, involved minority shareholders, and did not have the benefit of the teachings of *Davis*.