THORNBERRY, Circuit Judge:
If Justice Holmes was correct that “[tjaxes are what we pay for civilized society,” [1] then the question in this case is how much civilization the taxpayer will be required to purchase.
More precisely, we are asked to decide the proper tax treatment of a pro rata distribution of cash to shareholders in the course of a corporate reorganization. The taxpayer contends that this “boot” should be taxed as a long-term capital gain, while the government argues that it has “the effect of the distribution of a dividend” within the meaning of 26 U.S.C. § 356(a)(2) and should thus be taxed as ordinary income. The district court agreed with the taxpayer and awarded him a substantial refund.[2] For the reasons stated below, we reverse.
The facts are fully stipulated. LaMonte-Shimberg Corp. (LSC), a Florida corporation engaged in home construction and sales, was controlled by taxpayer Mandell Shimberg, Jr., who owned 66.8 per cent of the stock. His wife[3] owned an additional 1.6 per cent for the benefit of their children, and nineteen other unrelated persons held the remaining shares. MGIC Investment Corp. (MGIC) is a holding company *285 incorporated under the laws of Delaware that is primarily engaged, through various subsidiaries, in the financial guaranty business. In September 1970, MGIC and LSC executed a merger agreement, pursuant to which LSC was to be merged into MGIC in a transaction qualifying for statutory merger treatment under 26 U.S.C. § 368(a)(1)(A). To so qualify, the merger must satisfy applicable state laws regarding such reorganizations.[4] Thus, MGIC would be the surviving corporation, and the separate corporate existence of LSC would cease. Under the agreement, LSC shareholders were to receive, pro rata, $625,000 in cash and 32,132 shares of MGIC common stock, plus another 32,132 shares in escrow to be delivered in five years if the conditions of the agreement were met.
The merger was consummated on December 9, 1970, and taxpayer in exchange for his LSC stock received $417,449, plus 21,461 shares of MGIC common stock and a like number in escrow. Immediately prior to the merger, the undistributed earnings and profits of both corporations were in excess of $625,000 each.[5]
On his federal income tax return for 1970, taxpayer reported the cash received in connection with the merger as a long-term capital gain. Upon audit and examination of the return, the Internal Revenue Service determined that the cash received was taxable as a dividend, that is, as ordinary income. Accordingly, the IRS assessed a tax deficiency against taxpayer in the amount of $125,883. That amount, plus interest totalling $16,169.93, was paid, and taxpayer then filed for a refund. The IRS disallowed the refund claim in full, and taxpayer commenced this suit.
Under 26 U.S.C. § 368(a)(1), six types of corporate transactions are defined as “reorganizations,” among them a “statutory merger” pursuant to state law.[6] If the corporate transaction meets one or more of these definitions and thus qualifies as a reorganization, favorable tax treatment is available under § 354(a)(1), which provides that no gain or loss shall be recognized if, pursuant to a reorganization plan, stock or securities of one corporation are exchanged solely for stock or securities of another corporation that is a party to the reorganization. Accordingly, such transactions are generally characterized as “tax-free” reorganizations.
However, § 354(a)(1) makes clear that not all reorganizations will be entirely tax free, for it applies so long as a shareholder of one corporation receives as consideration only stock or securities of another corporation participating in the reorganization. Under some reorganizations — including the statutory merger — the transaction is not a stock-for-stock exchange but may involve additional consideration such as cash or property other than stock. In these circumstances, this additional consideration — commonly known as “boot” — does not qualify for tax-free treatment. 26 U.S.C. § 356(a)(1).[7] Thus, the reorganization is only partially tax-free.
Most state laws, including the Florida and Delaware statutes applicable here,[8] per *286 mit other consideration in addition to stock to be utilized in a statutory merger. In the instant case the “boot” was a pro rata distribution of $625,000 to the LSC shareholders. The question in this case is not whether the “boot” is to be taxed — for § 356(a)(1) makes clear that it is — but whether it is to be taxed as proceeds from the sale of a capital asset, i. e., as a capital gain, or as a dividend, i. e., as ordinary income.
The answer turns on whether the payment and receipt of the “boot” has “the effect of the distribution of a dividend” within the meaning of § 356(a)(2), which provides:
Treatment as dividend. — -If an exchange is described in paragraph (1) but has the effect of the distribution of a dividend, then there shall be treated as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be treated as gain from the exchange of property.
The district court, 415 F.Supp. 832, held that the test to be applied in determining whether the exchange had “the effect of the distribution of a dividend” is whether the transaction resulted in a “meaningful reduction” of the taxpayer’s proportionate interest in the corporation, relying on United States v. Davis, 397 U.S. 301, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970), and Wright v. United States, 482 F.2d 600 (8 Cir. 1973). The court then compared the taxpayer’s interest in the merged corporation (LSC) with his interest in the surviving corporation (MGIC). Because taxpayer held a controlling interest — 68 per cent of the stock— in LSC prior to the merger and owned less than one per cent of MGIC’s stock after the merger, the court concluded that the merger resulted in “a radical change and meaningful reduction” in taxpayer’s interest in the continuing business and thus did not have the effect of the distribution of a dividend under § 356(a)(2). Accordingly, the court held that the “boot” was taxable as a capital gain. Unfortunately, this approach is too simplistic.
In United States v. Davis, supra, the Supreme Court was faced with interpreting 26 U.S.C. § 302,[9] under which a stock redemption is treated as a distribution in payment in exchange for the stock and thus qualifies for capital gain treatment under certain circumstances. Under § 302(b)(1), capital gain treatment is available if the redemption is “not essentially equivalent to a dividend.” However, if the redemption has dividend equivalency, it is taxed as ordinary income. Although the Court was primarily faced with two other issues,[10] it followed a long line of prior decisions [11] in holding that to qualify under § 302(b)(1), a redemption must result in a “meaningful reduction of the shareholder’s proportionate interest in the corporation.” 397 U.S. at 313, 90 S.Ct. at 1048. If the redemption does not result in such a reduction, it is considered essentially equivalent to a dividend and is taxed as ordinary income. The taxpayer in Davis *287 was the sole shareholder in a corporation both before and after he redeemed a certain amount of his stock and thus did not meet the meaningful reduction test. Obviously, his relationship with other shareholders in the corporation did not change and he suffered no loss of voting power or control.
In Wright v. United States, supra, the Eighth Circuit applied the “meaningful reduction” analysis to a corporate reorganization. There three corporations were owned and controlled by the same shareholders but in different proportions. The principal shareholders wanted to consolidate two of the corporations into a single entity in which their ownership would be approximately the same proportion as in the other corporation. This goal could not be accomplished through a simple merger because one corporation was worth about twice as much as the other. Accordingly, the reorganization required payment of a “boot” to the taxpayer to reflect his greater entitlement and to result in a new corporation with the desired ownership percentages. Even though a formal redemption did not occur, the court viewed the “boot” from the reorganization as having been paid to the taxpayer by the newly formed corporation when he redeemed his stock in that corporation — stock which never had been issued and which the taxpayer had never owned. The court thus treated the transaction as if there had been only one corporation all along and as if one shareholder had redeemed his stock. Because this hypothetical redemption resulted in a 23 per cent reduction in the taxpayer’s ownership,[12] the court concluded that the “redemption” had caused a “meaningful reduction” under Davis. Thus, the court concluded that the “boot” was “not essentially equivalent to a dividend” under § 302(b)(1) and therefore did not have “the effect of the distribution of a dividend” under § 356(a)(2).
Application of the “meaningful reduction” test in Wright was not illogical, given the court’s recasting of the transaction, since a single shareholder was treated as having redeemed his stock in a single corporation. In the instant case, however, the reorganization involves two different corporations of different sizes and with different shareholders. There is no commonality of ownership as in Wright, and, accordingly, no opportunity for reshaping the transaction as a redemption. Moreover, there was not a single “boot” distribution to a single shareholder, as in Wright, but a pro rata distribution to all LSC shareholders.
The “meaningful reduction” test cannot be indiscriminately applied in the reorganization context. The Davis case illustrates its proper application in a redemption under § 302, as does the recently decided case of Morris v. United States, 441 F.Supp. 76 (N.D.Tex.1977), while Wright indicates that it also is appropriate when a reorganization can be realistically treated as a redemption. Even assuming that Wright is correctly decided — a point on which we express no opinion — the instant case presents radically different facts and calls for correspondingly different analysis. We agree with the government that “the undifferentiating invocation of stock redemption principles in a reorganization case” such as this one is erroneous, and we decline to apply on a wholesale basis the “meaningful reduction” test in cases arising under § 356(a)(2).[13] Accordingly, we hold *288 that the district court erred in utilizing “meaningful reduction” analysis in this case. A contrary holding would render § 356(a)(2) virtually meaningless when a large corporation swallows a small one in a reorganization, for there will always be a marked decrease in control by the small corporation’s shareholders, unless the same shareholders control both corporations. And, even in that situation, disproportionate ownership — as in Wright — could result in a meaningful reduction.
Section 356(a)(2) requires that a “boot” be taxed as a dividend if it “has the effect of the distribution of a dividend.” The focal point of our analysis, then, is the effect of the “boot” in the instant case, and we must examine all of the facts and circumstances surrounding its distribution in light of basic tax principles pertaining to dividends and reorganizations.
Under 26 U.S.C. § 316(a), “dividend” is defined as “any distribution of property made by a corporation to its shareholders . out of its earnings and profits,” either current or accumulated. Thus, a dividend is the severance of profits from the corporation and the distribution of those profits to the shareholders. United States v. Phellis, 257 U.S. 156, 170, 42 S.Ct. 63, 66 L.Ed. 180 (1921). Section 301(c) provides that a dividend is to be included in the taxpayer’s gross income.
The theory behind tax-free corporate reorganizations is that the transaction is merely “a continuance of the proprietary interests in the continuing enterprise under modified corporate form.” Lewis v. Commissioner of Internal Revenue, 176 F.2d 646, 648 (1 Cir. 1949); Treas.Reg. § 1.368-1(b). See generally Cohen, Conglomerate Mergers and Taxation, 55 A.B.A.J. 40 (1969). Indeed, if the transaction does not involve the exchange of sufficient stock or securities, the judicially-created “continuity of proprietary interest” test destroys the transaction’s treatment as a reorganization.[14]
If a pro rata distribution of profits from a continuing corporation is a dividend, and a corporate reorganization is a “continuance of the proprietary interests in the continuing enterprise under modified corporate form,” it follows that the pro rata distribution of “boot” to shareholders of one of the participating corporations must certainly have the “effect of the distribution of a dividend” within the meaning of § 356(a)(2). King Enterprises, Inc. v. United States, 418 F.2d 511, 189 Ct.Cl. 466 (1969); Hawkinson v. Commissioner of Internal Revenue, 235 F.2d 747 (2 Cir. 1956); Ross v. United States, 163 F.Supp. 793, 146 Ct.Cl. 223 cert. denied, 361 U.S. 875 (1959); Love v. Commissioner of Internal Revenue, 113 F.2d 236 (3 Cir. 1940); Rose v. Little Inv. Co., 86 F.2d 50 (5 Cir. 1936); Commissioner of Internal Revenue v. Owens, 69 F.2d 597 (5 Cir. 1934). Moreover, the legislative history of § 356(a)(2)’s predecessor statute makes clear that a distribution that would have been a dividend if made prior to the reorganization is subject to the same treatment when made as part of the transaction. H.Rep. No. 179, 68th Cong., 1st Sess., 14-15 (1924) [1939-1 Cum.Bull. (Part 2), 241, 252]; S.Rep. No. 398, 68th Cong., 1st Sess., 15-16 (1924) [1939-1 Cum.Bull. (Part 2), 266, 277],
Accordingly, § 356(a)(2) requires a determination of whether the distribution would have been taxed as a dividend if made prior to the reorganization or if no reorganization had occurred. This inquiry *289 is essentially a comparison of the effect of actual distribution and the effect of a hypothetical one. Prior to the merger in the instant case, LSC had retained earnings of approximately $725,000. In the course of the merger, LSC shareholders received a pro rata distribution of $625,000 as “boot”. If no reorganization had taken place and LSC had made such a pro rata distribution, or if LSC had taken such action prior to the merger, there is no doubt that this would have been a dividend taxable as ordinary income. The same result should obtain where, as here, the LSC shareholders received a pro rata “boot” of $625,000.[15] Indeed, the legislative history of the predecessor to § 356(a)(2) offers virtually the same fact situation as an example of a transaction having the effect of a dividend distribution.[16] The taxpayer should not be able to reap the benefits of capital gain treatment simply because he received his share of the distribution after the merger in the form of a “boot” rather than before the merger in the form of a dividend.
Taxpayer argues that we ignore economic reality by hypothesizing that LSC could have declared a dividend prior to the merger, since the corporation had only $147,000 in cash on hand when the merger took place. Taxpayer thus asks us to erase approximately $725,000 in retained earnings from the corporation’s pre-merger balance sheet and pretend that these profits were never made. This we refuse to do. It is apparent that taxpayer, who controlled LSC made a considered decision to utilize the corporation’s retained earnings for purposes other than payment of a dividend. It cannot be said that LSC was unable to pay a dividend; rather, for reasons not revealed in the record, it chose not to do so. Moreover, despite taxpayer’s protestations to the contrary, it seems clear that the merger operated as a device for “bailing out” LSC’s retained earnings, which were evidently tied up in certain aspects of the business’ operation.
Taxpayer also contends that our analysis in this case constitutes abrogation of the “step transaction” doctrine. We disagree. Under the doctrine, which has application in a variety of tax situations, all parts of a multi-step exchange or reorganization are grouped together to determine the appropriate tax treatment for the entire transaction, if the several steps are an essential and integral part of the overall plan. See Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775 (1942); Kanawha Gas & Utilities Co. v. Commissioner of Internal Revenue, 214 *290 F.2d 685 (5 Cir. 1954). However, the doctrine is certainly no bar to our comparing the “boot” distribution in the instant case with a hypothetical situation in which the pro rata distribution of LSC’s retained earnings would obviously have been a dividend. If the doctrine forbids such an examination of the “boot” portion of the reorganization scheme, it would be impossible to determine whether the “boot” distribution had the effect of the distribution of a dividend. We are not treating the “boot” distribution as a separate step in the overall transaction but are rather analyzing the distribution in accordance with the requirements of § 356(a)(2).[17] Moreover, taxpayer’s reliance on the step transaction doctrine seems bottomed on his view that the meaningful reduction test applies here and that the appropriate focus is control of the corporation.[18] We again reject this approach, for, as we have previously pointed out, a majority shareholder in a small corporation will always become a minority shareholder in a large corporation that acquires the small one, so long as there is no commonality of ownership. Further, although taxpayer and the other LSC shareholders relinquished their control of LSC, they certainly did not part with their interests in the continuing corporate entity under the reorganization, i. e., MGIC. Taxpayer’s approach also fails to address the effect of the “boot” distribution itself, an inquiry mandated by the plain language of § 356(a)(2).
Finally, we are compelled to note that our decision today does not signal a return to the now-discredited “automatic dividend” rule.[19] We are concerned in this case with the effect of a pro rata “boot” distribution, not with the effect of a distribution on a non-pro rata basis. Obviously, the latter variety does not bear the earmarks of a classic dividend. Further, we do not totally reject the relevance of principles developed in § 302 redemption cases in the context of a corporate reorganization implicating § 356. However, such a blind application of those principles would be somewhat akin to hunting ducks with a deer rifle, since there are fundamental differences between the redemption of stock in a single corporation and the reorganization of two or more corporations that results in a “boot”.
Accordingly, we hold that the district court erred in concluding that the meaningful reduction test of Davis was applicable here and that the “boot” received by the taxpayer was to be taxed as a- capital gain. Because the distribution of the “boot” had the effect of the distribution of a dividend, § 356(a)(2) requires that it be taxed as ordinary income.[20]
REVERSED.

. Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100, 48 S.Ct. 100, 105, 72 L.Ed. 177 (1927) (Holmes, J., dissenting).

. Shimberg v. United States, 415 F.Supp. 832 (M.D.Fla.1976).

. Mrs. Shimberg is involved in this case only because she filed a joint income tax return with her husband for 1970, the year in question.

. See Del.Code Ann., tit. 8, § 252 (Supp.1977); Fla.Stat.Ann. § 607.234 (1977). Section 368(a)(1)(A) also applies to consolidations, and transactions under this section are commonly known as “A” reorganizations.

. As of October 31, 1970, LSC’s consolidated balance sheet showed retained earnings of $724,559, while on December 31, 1970, MGIC had retained earnings of $34,012,746.

. Section 368(a)(1)(A). See generally 1 Fox & Fox, Corporate Acquisitions & Mergers, 11 H 3.03, 4.02 (1977); Comment, 60 Nw.L.Rev. 655 (1965).

. Section 356(a)(1) provides:
Gain on exchanges.—
(1) Recognition of gain. — If—
(A) section 354 or 355 would apply to an exchange but for the fact that
(B) the property received in the exchange consists not only of property permitted by section 354 or 355 to be received without the recognition of gain but also of other property or money,
then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

. Del.Code Ann., tit. 8, § 252 (Supp.1977); Fla. Stat.Ann. §§ 607.214, 607.234 (1977).

. Section 302 provides, in pertinent part:
(a) General Rule. — If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
(b) Redemptions treated as exchanges.—
(1) Redemptions not equivalent to dividends. —Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

. In resolving these questions, the Court held that the rules of attribution of stock ownership in § 318(a) apply to § 302(b)(1) and that “business purpose” was irrelevant in determining whether a redemption is equivalent to a dividend.

. E. g., Levin v. Commissioner of Internal Revenue, 385 F.2d 521 (2 Cir. 1967); Bradbury v. Commissioner of Internal Revenue, 298 F.2d 111 (1 Cir. 1962); Keefe v. Cote, 213 F.2d 651 (1 Cir. 1954); Commissioner of Internal Revenue v. Roberts, 203 F.2d 304 (4 Cir. 1953); Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937 (1940). See also 1 J. MERTENS, LAW OF FEDERAL INCOME TAXATION, § 90.100 (1974); B. BITTKER & J. EUSTICE, FEDERAL INCOME TAXATION OF CORPORATIONS & SHAREHOLDERS, 9-24 — 9-27 (3d ed. 1971).

. Before the reorganization, the taxpayer owned 85 per cent of the two corporations. After the reorganization, he owned 62 per cent of the new corporation.

. We are not unaware of several cases indicating that Sections 356(a)(2) and 302(b)(1) are to be read in pari materia, despite the absence of an express statutory relationship between them. E. g., Hawkinson v. Commissioner of Internal Revenue, 235 F.2d 747, 751 (2 Cir. 1956); Ross v. United States, 173 F.Supp. 793, 797, 146 Ct.Cl. 223, cert. denied, 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113 (1959). This is correct in that both provisions are usually triggered by pro rata distributions. However, the facts of the instant case illustrate why principles developed in § 302(b)(1) cases cannot be haphazardly applied in the context of a § 356(a)(2) reorganization. The Internal Revenue Service has stated that tests developed for § 302 may “in appropriate cases” serve as “useful guidelines for purposes of applying § 356(a)(2).” Rev.Rul. 74-516, 1974-2 Cum. Bull. 121. We agree with the government that *288 the instant case is not among those “appropriate cases.”

. The purpose of the test is to ensure that the shareholders of the corporations involved in a reorganization retain a significant continuing equity interest in the reorganized business. See Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940); Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284 (1935); Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428 (1933); Southwest Natural Gas Co. v. Commissioner of Internal Revenue, 189 F.2d 332 (5 Cir.), cert. denied, 342 U.S. 860, 72 S.Ct. 88, 96 L.Ed. 647 (1951). See generally Sapienza, Tax Considerations in Corporate Reorganizations and Mergers, 60 Nw.L.Rev. 765 (1966); Fox & Fox, supra, n. 6, H 4.02 [5] [a].

. The “boot” is to be treated as having been distributed by the acquired corporation — here LSC — rather than by the acquiring corporation. See Commissioner of Internal Revenue v. Owens, supra; Ross v. United States, supra; James Armour, Inc., 43 T.C. 295 (1964). Our decision in Davant v. Commissioner of Internal Revenue, 366 F.2d 874 (5 Cir. 1966), cert. denied, 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1967), is not to the contrary. There we recognized the general rule stated above, but looked to the acquired and acquiring corporations since both had the same shareholders. As we pointed out, the two corporations “were but different pockets in the same pair of trousers.” 366 F.2d at 889.

. The House Report states:
The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.
On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the insurance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,-000 distributed with the stock of corporation B would be taxed, not as a dividend, but as a capital gain, subject only to the 12‘/2 per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12V2 per cent rate on capital gain. Here again this provision prevents evasions.
House Report No. 179, supra at 14-15. Senate Report No. 398, supra at 15-16, gives the same example.

. The doctrine’s place in the reorganization context is plain, for when cash is received in a series of transactions in connection with a general reorganization plan, the taxable result may vary considerably depending upon whether the transactions are to be considered separately or as a whole and whether the cash constitutes “boot” or the sole consideration in connection with a single step in the transaction. See 3 J. MERTENS, LAW OF FEDERAL INCOME TAXATION, §§ 20.161 et seq. (1972). There is no doubt in the instant case that the “boot” was distributed pursuant to an overall plan of corporate reorganization.

. Taxpayer cites and discusses various § 302 redemption cases. E. g., Zenz v. Quinlivan, 213 F.2d 914 (6 Cir. 1954); Arthur D. McDonald, 52 T.C. 82 (1969). As we have previously indicated, we will not haphazardly apply § 302 principles in § 356 cases. Moreover, the cases relied on by taxpayer only peripherally involve the step transaction doctrine and simply stand for the proposition that either the complete termination of a taxpayer’s interest in a corporation or the substantial reduction of that interest does not result in dividend equivalency. The Supreme Court reaffirmed this principle in Davis.

. This rule stemmed from language in Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945). The opinion was widely criticized, however, because it appeared to encompass all distributions, regardless of whether they were made on a pro rata basis. Accordingly, a string of lower court decisions have retreated from the rule and have examined, as we have done here, the facts and circumstances of each case in order to determine the effect of the distribution. E. g., Hawkinson v. Commissioner of Internal Revenue, supra; Ross v. United States, supra.

. This case is obviously a complex one, and the court was aided by the excellent briefs and *291 argument of both parties. We thus cannot say that this tax puzzle is one that “cometh not out save by fasting and by prayer,” Houston Textile Co. v. Commissioner of Internal Revenue, 173 F.2d 464 (5 Cir. 1949) (Hutcheson, J.), although we certainly do not disparage either of those activities.