Glenn A. SOUIFE, Plaintiff–Appellant,

v.

FIRST NATIONAL BANK OF COMMERCE, Defendant–Appellee.

No. 78–2562.

United States Court of Appeals,
Fifth Circuit.

Oct. 22, 1980.

Jefferson, Bryan & Gray, Trevor G. Bryan, New Orleans, La., for plaintiff–appellant.

David S. Willenzik, New Orleans, La., for defendant–appellee.

Drew V. Tidwell, V.P., The Consumer Bankers Assn., Washington, D.C., for The Consumer Bankers Assn. and the Louisiana Bankers Assn. amicus curiae.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In this appeal from summary judgment for the appellee in a suit brought under the Truth–In–Lending Act, 15 U.S.C. § 1639(a) (1976), we must consider three issues. First, does the appellee's right to insurance proceeds and returned premiums with regard to credit life and property insurance on the collateral constitute a "security interest" which must be disclosed on the disclosure statement pursuant to section 1639(a) and Regulation Z, 12 C.F.R. § 226.-8(b)(5) (1980)? Second, if the right to these proceeds and premiums constitutes such a "security interest," did the appellee provide adequate disclosure? Third, does the Act require disclosure of taxes, recordation fees, license fees, certificate of title fees, and dealer documentation fees in the section of the disclosure statement entitled "Amount of Loan," rather than in the section entitled "Other Charges"? Because we conclude that the right to insurance proceeds and returned premiums constitutes a "security interest" which must be disclosed under section 1639(a) and Regulation Z, and because we conclude that appellee did not adequately disclose this security interest on the disclosure form, we reverse the district court judgment with regard to these issues. We affirm the judgment with regard to the "Other Charges."

*I. Facts.*

In February 1976 appellant Souife applied for a direct loan with the appellee, First National Bank of Commerce, for the purpose of financing the purchase of an automobile. The bank regularly extends credit to consumers in the normal course of its business. The bank approved Souife's application and allowed him to buy an automobile within certain price limitations from any dealer. Souife subsequently negotiated with a dealer to purchase an automobile, and contacted the bank about the financing.

In March 1976 Souife executed a loan agreement with the bank at which time Souife issued a promissory note and chattel mortgage in the bank's favor. Under the chattel mortgage agreement Souife was required to purchase property insurance on the automobile. In the event of loss or damage to the automobile, the agreement required Souife to assign any proceeds from the policy to the bank to be applied against the unpaid balance of the loan, without regard to whether Souife was in default on any loan payments. In the event that the policy was cancelled or terminated before its termination date, the agreement required Souife to assign any returned premium payments to the bank to be applied against the unpaid balance of the loan, regardless of default. Souife also chose to purchase optional credit life insurance. As with the property insurance, any proceeds or returned premiums from the credit life insurance policy were payable to the bank to be applied against the unpaid balance of the loan even if Souife had not defaulted on any payments. The bank provided Souife with copies of these documents, as well as disclosure statements required under Louisiana law and the Truth–In–Lending Act.

A copy of the federal disclosure statement appears in the appendix to this opinion.

In March 1977 Souife filed a class action against the bank in federal district court for numerous violations of the Act. Before trial Souife dropped his request for class action status, and proceeded only with his individual claims. Because the parties stipulated all pertinent facts, the district judge decided the case on summary judgment motions. The judge ruled for the bank on all issues presented in this appeal. Assuming *arguendo* that the right to insurance proceeds and returned premiums constitutes a "security interest" under Regulation Z, the judge held that the disclosure statement adequately disclosed this interest. The judge also held that the various taxes and fees were properly listed under the section entitled "Other Charges," rather than under the section entitled "Amount of Loan."

## II. Security Interest under Regulation Z.

The Truth–In–Lending Act was enacted in 1968

to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

15 U.S.C. § 1601 (1976). One of the credit terms which must be disclosed under the Act is the retention or acquisition of any security interest by the creditor in a consumer credit transaction. 15 U.S.C. § 1639(a)(8) (1976). The Act does not define what constitutes such a "security interest." Pursuant to 15 U.S.C. § 1604 (1976), the Federal Reserve Board enacted Regulation Z, which defines "security interest" as follows:

"Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both

real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

12 C.F.R. § 226.2(gg) (1980).

[1, 2] The bank contends that the definition of "security interest" for purposes of Regulation Z should be determined by state law. Under Louisiana law, the bank contends, a creditor's right to insurance proceeds and returned premiums would not constitute a "security interest." We rejected the bank's argument in *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291 (5th Cir.1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979). We held in *Edmondson* that the definition of a "security interest" for purposes of disclosure under Regulation Z does not depend upon the technicalities of state law; as long as the creditor enjoys an interest in property which helps secure payment or performance of the contractual obligation, that interest must be disclosed to the consumer debtor. 577 F.2d at 293–94. In *Edmondson* we applied this rule to find that a creditor's right to returned insurance premiums for an automobile loan similar to the loan in this case constitutes a "security interest" that must be disclosed under Regulation Z. The rationale in *Edmondson* derived from the Third Circuit decision in *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 442–43 (3rd Cir.1977) (right to insurance proceeds and returned premiums for automobile loan constitutes "security interest"). The Seventh Circuit followed *Edmondson* in *Valencia v. Anderson Brothers Ford*, 617 F.2d 1278, 1283–86 (7th Cir.1980) (right to returned premiums for automobile loan constitutes "security interest"). We recently reaffirmed that state law does not define a "security interest" for purposes of Regulation Z in *Travis v. Trust Co. Bank*, 621 F.2d 148, 150 (5th Cir.1980).

The bank urges us to abandon our holding in *Edmondson* in light of the Supreme Court decision in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63

L.Ed.2d 22 (1980) and Unofficial Fed. Res.Bd. Staff Op. No. 1263, 5 (CCH) Cons. Cred. Guide ¶ 31,736 (November 23, 1977). In *Milhollin* the Supreme Court emphasized that, in enacting 15 U.S.C. § 1640(f), Congress intended that official Federal Reserve Board interpretations of the Truth–In–Lending Act should be authoritative. In Unofficial Staff Op. No. 1263, a creditor asked the Board Staff what type of disclosure was required for a creditor's rights to insurance proceeds or unearned premiums. The Staff replied that

> What constitutes adequate identification of the type of security interest acquired by the creditor depends upon how relevant State Law would describe the security interest. Note that a more fundamental matter in these circumstances may be to determine whether a security interest exists at all and, if so, to identify the property subject to such interest. Section 226.2(gg) defines "security interest" as "any interest in property which secures payment or performance of an obligation." Thus, if the creditor does not acquire any interest in property (including real property or tangible or intangible personal property), or if any such interest does not secure payment of the debt, no security interest exists. For example, the contractual right to proceeds under an insurance policy may not amount to an interest in property. On the other hand, an assignment of returned or unearned premiums may transfer to the creditor such an interest. However, Staff believes those questions would be better addressed as a matter of State Law.

For at least two reasons the *Milhollin* decision and this staff opinion do not require us to abandon our holding in *Edmondson*. First, the Supreme Court stated in *Milhollin* that "[u]nofficial interpretations have no special status under § 1640(f)." 100 S.Ct. 798 n.10. As a result, courts are not bound to follow unofficial interpretations in the same manner that courts must follow official interpretations under *Milhollin. See also Valencia v. Anderson Brothers Ford,* 617 F.2d at 1292 n.21. Second, the unoffi-

cial staff opinion is not necessarily inconsistent with the rationale in *Edmondson*. Although the staff opinion emphasizes that state law is important for determining what constitutes a "security interest," *Edmondson* itself indicates that state law should determine whether a creditor possesses a substantive interest in property securing performance of an obligation; then Regulation Z defines whether this state–created substantive right constitutes a "security interest" for federal disclosure purposes. *See Valencia,* 617 F.2d at 1285. *Edmondson* relied upon official Public Position Letter No. 377 (July 22, 1970), which applied Regulation Z without mention of state law to define what constitutes a "security interest" in an analogous situation. *Edmondson,* 577 F.2d at 295 n.8.

Even if federal law applies to define what constitutes a "security interest" for disclosure purposes, the bank contends that the recent statutory amendments to the Truth–In–Lending Act indicate that, even under the prior, unamended Act, Congress did not intend for a creditor's rights in insurance proceeds and returned premiums to constitute a "security interest." On March 31, 1980, the President signed the Truth–In–Lending Simplification and Reform Act of 1980, Pub. Law No. 96–221, 94 Stat. 132. These amendments do not take effect until April 1982, although section 625(c) provides that "any creditor may comply with the amendments made by this title, in accordance with the regulations, forms, and clauses prescribed by the Board, prior to such effective date." The bank does not assert that these amendments should apply directly to this appeal. Instead, the bank contends that these amendments should be considered as evidence of congressional intent as early as 1968 when Congress passed the Act as in effect at the time this litigation arose.

The new amendments do not significantly alter the statutory provision regarding security interests, although the amended provision uses somewhat narrower language than does the original statute. Current section 1639(a)(8) requires creditors to disclose

A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

Section 614(a)(9) of the 1980 Act will substitute the following disclosure requirements:

Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.

The bank does not contend that the change in statutory language directly supports its argument about security interests. Instead, the bank selects passages in the legislative history to suggest that Congress did not intend to include creditors' rights in insurance proceeds and returned premiums under the definition of "security interest" even under the original Act. In the Senate Banking Committee report, the section–by–section analysis of the new bill includes the following remarks:

When a security interest is being taken in property purchased as part of the credit transaction, this section requires a statement that a security interest has been or will be taken in the property purchased. When a security interest is being taken in property not purchased as part of the credit transaction, the Committee intends this provision to require a listing by item or type of the property securing the transaction, but not a listing of related or incidental interests in the property. For example, a loan secured by an automobile (not being purchased with the proceeds of the loan) would require a statement indicating that the loan is secured by an automobile but would not require a listing of incidental or related rights which the creditor may have such as insurance proceeds or unearned insurance premiums, rights arising under, or waived in accord with state law, accessions, accessories, or proceeds.

S.Rep.No.96–73, 96th Cong. 1st Sess. 16 (1979), U.S.Code Cong. & Admin.News 1980, pp. ——, ——. The Tenth Circuit cited this committee report as evidence of congressional intent not to include unearned insurance premiums under the definition of "security interest" in the original Act. *James v. Ford Motor Credit Co.,* No. 78–1806, slip op. at 7 (10th Cir. June 24, 1980). Relying in part on this report, the Tenth Circuit held that such rights in insurance need not be disclosed, and refused to follow the *Gennuso, Edmondson,* and *Valencia* decisions. The bank also submits the following remarks made by Senator Garn in a speech before the Senate:

Many cases have resulted from the complex security interest disclosure requirements under the law. An illustrated case is *Gennuso v. Commercial Bank & Trust Co.,* 455 [425] F.Supp. 461 (W.D.Pa. 1976); 566 F.2d 437, (3d Cir. 1977), which required the creditor's right in property insurance proceeds and unearned property insurance premiums to be disclosed as a "security interest." Although as presently written the law does not require that result, S. 108 should prevent such ludicrous interpretations by requiring merely a positive indication if a security interest is being taken in the property purchased and if it is in property not being purchased in the transaction, simply a general listing of the type of property without a listing of incidental related interests.

125 Cong.Rec. S4990 (daily ed. May 1, 1979).

We do not find that the committee report or the senator's speech provides persuasive evidence of congressional intent with regard to the situation presented on this appeal, which is governed by the original Act. Neither the report nor the speech refers to Congress's intent at the time the original Act was passed. Neither the report nor the speech indicates that cases like *Edmondson* and *Gennuso* incorrectly interpreted the original Act. On the contrary, Senator Garn's remarks indicate his belief that the original Act *allowed* the result in *Gennuso,* even though that result was not *required* by the original Act.

Moreover, the specific situations discussed in the committee report and in the senator's speech are distinguishable from the situation presented on this appeal. When the committee report suggests that the creditor's rights to insurance proceeds or unearned premiums need not be disclosed, the report refers only to "a loan secured by an automobile (*not being purchased with the proceeds of the loan*)" (emphasis added). Senator Garn's remarks similarly indicate that the amendments require "a positive indication if a security interest is being taken in the property purchased and if it is in property not being purchased in the transaction, simply a general listing of the type of property without a listing of incidental related interests." The transaction at issue on this appeal is distinguishable because, contrary to the situation in the committee report, Souife purchased his automobile with the proceeds of the loan. Moreover, the bank's interest in his credit life insurance and property insurance on that automobile is not merely incidental because these policies were themselves purchased as part of the credit transaction. The statutory amendments, committee report, and Senator Garn's remarks all indicate that a security interest in property purchased as part of the credit transaction must be properly disclosed on the disclosure form. On this appeal we need not and do not decide whether the new amendments would require disclosure of the bank's interest in insurance proceeds and returned premiums for a loan transaction made when these amendments are in effect. We decide only that, because the legislative history submitted by the bank applies so ambiguously to the situation presented on this appeal, and because Congress expressed no clearer evidence of their intent for interpreting the original Act, we decline to abandon our holding in *Edmondson* interpreting the original Truth–In–Lending Act.

*III. Adequacy of Disclosure.*

Having concluded that the bank's right to insurance proceeds and returned premiums constitutes a "security interest" which must be disclosed under section 1639(a) and Reg-

ulation Z, we must now consider whether the bank adequately disclosed this interest on the federal disclosure form. The regulation governing adequacy of disclosure for such security interests is 12 C.F.R. § 226.-8(b)(5) (1980), which requires that the following be disclosed:

A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after–acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained, or acquired.

The district court concluded that the following passages on the disclosure form provided adequate disclosure of the bank's right to insurance proceeds and returned premiums:

D. SECURITY INTEREST: This loan is secured by a Louisiana Chattel Mortgage of even date on the commodity described below. Said chattel mortgage also affects after acquired property and other indebtedness of customer to Bank.

[description of automobile]

This loan is further secured by the pledge of any and all money or securities or other property whatsoever on deposit with, or in possession of, or under the control of Bank as collateral or otherwise, or in transit to and from Bank for any purpose, belonging to or to the credit of or for the account of customer.

E. INSURANCE: (1) *Property Insurance*: Customer is required to maintain insurance on the commodity described above for the term of this loan. Customer may choose the person through which such insurance is to be obtained. Customer is required to furnish Bank with a copy of such an insurance policy containing a long form loss payable clause in favor of the Bank.

(2) *Credit Life Insurance*: Credit Life Insurance is not required in order to obtain this loan. Customer may purchase such insurance coverage through Bank on a voluntary basis. No charge will be made and no insurance will be issued unless customer dates and signs the appropriate statement(s) below . . .

■ The section entitled "Security Interest" does not disclose significant information about the bank's rights to insurance proceeds and returned premiums. Mere mention that the bank holds a "Louisiana Chattel Mortgage" does not indicate that the bank also holds a security interest in insurance proceeds and returned premiums. The paragraph describing the bank's right to offset Souife's deposits in the bank is also inadequate to disclose the bank's interest in the insurance proceeds and returned premiums because the bank can recover the insurance proceeds and premiums even if Souife does not deposit them at the bank or otherwise place them in the bank's possession.

■ The section entitled "Insurance" makes no reference to the bank's interest in proceeds and returned premiums from Souife's credit life insurance policy. As a result, the disclosure form violates section 1639(a) and Regulation Z with regard to credit life insurance. With regard to prop-erty insurance, the disclosure form describes the bank's right to proceeds and returned premiums only as a "long form loss payable clause in favor of the Bank." Although this phrase may have meaning to a person experienced in the consumer credit industry, the purpose of the Truth–In–Lending Act is to promote meaningful disclosure and the informed use of credit for ordinary laypersons engaged in consumer transactions. *See Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d at 296. Because the phrase "long form loss payable clause in favor of the Bank" would not disclose to an ordinary lay borrower that the bank retained the right to insurance proceeds and returned premiums regardless of default, we conclude that the disclosure form violates section 1639(a) and Regulation Z with regard to property insurance, as well as with regard to credit life insurance.

### IV. *Other Charges.*

■ Souife contends that the taxes, recordation fees, license fees, certificate of title fee, and dealer documentation fee should have been listed in the section of the disclosure statement entitled "Amount of Loan" rather than in the section entitled "Other Charges." We affirm the district court judgment on this issue. Items such as official fees, taxes, license fees, title fees, and registration fees should generally be included under the section entitled "Finance Charge," but these items may be excluded from this section if they are properly itemized and disclosed in accordance with the regulations. 15 U.S.C. § 1605(a) (1976); 12 C.F.R. § 226.4(b) (1980). Because these items were excludable from the "Finance Charge" section and were otherwise properly disclosed, the bank correctly listed the total "Amount Financed" as consisting of the "Amount of Loan" plus the itemized "Other Charges." *See* 15 U.S.C. § 1639(a).

Because we conclude that the right to insurance proceeds and returned premiums constitutes a "security interest" which must be disclosed under section 1639(a) and Regulation Z, and because we conclude that appellee did not adequately disclose this

security interest on the disclosure form, we reverse the judgment of the district court on these issues and remand the case to the court below. We affirm the district court judgment with regard to the disclosure of "Other Charges."

**REVERSED IN PART AND AFFIRMED IN PART.**

## APPENDIX

### EXHIBIT 1

Direct Precomputed Interest Consumer Loans Under the Louisiana Motor Vehicle Sales Finance Act

**LOAN DISCLOSURE STATEMENT AS REQUIRED UNDER THE FEDERAL TRUTH–IN–LENDING LAW AND REGULATION Z**

Customer's Name and Address:

Glenn A. Souife
831 Bordeaux St.
New Orleans, La. 70115

Bank: First National Bank of Commerce
210 Baronne Street
New Orleans, Louisiana 70112
Date: March 26, 1976

(1) Amount of Loan $3939.06
(2) Other Charges consisting of:
    (a) Credit Life Insurance Premium    $ 157.24
    (b) Taxes    $ 326.34
    (c) Recordation Fees    $ 1.00
    (d) License Fees    $ 5.00
    (e) Certificate of Title    $ 3.50
    (f) Others (Specify):
Dealer Documentation Fee    $ 5.00
    Total Other Charges    $ 499.08
    (a + b + c + d + e + f)

(3) Amount Financed (1 + 2)    $4438.14
(4) FINANCE CHARGE consisting of:
    (a) Interest FINANCE CHARGE    $803.10
    (b) Other FINANCE CHARGES:
      (Specify): _____ $_____
    Total FINANCE CHARGE (a + b)    $ 803.10
(5) Total of Payments (3 + 4)    $5241.24
(6) ANNUAL PERCENTAGE RATE    11.14 %

Total of Payments payable in ___35___ monthly consecutive installments of $ 145.39 each and one final installment of $ 145.39, all payable on the same day of each successive month commencing ___April 25___, 19 76. Date FINANCE CHARGE begins to accrue if different from the date of this disclosure statement:_____, 19____.

A. DELINQUENCY CHARGE: If any installment is not paid within ten (10) days after its scheduled due date, a Delinquency Charge will be assessed of 5% of the installment amount or $5.00, whichever is less.

B. DEFAULT: In the event of default, Bank may, at its option, declare the unpaid balance of this loan, less any refund of unearned charges as provided for herein, to be due and payable without notice or demand. Thereafter, the unpaid balance of this loan, less any rebate of unearned charges, shall bear interest at the rate of 8% per annum (ANNUAL PERCENTAGE RATE 8%) from date of accelerated maturity until paid in full. If, after default, this loan is referred to an attorney, customer will pay the fees of such an attorney, which fees are fixed at 25% of the total amount due and payable under this loan, with a minimum of $15.00. In addition, customer will reimburse Bank for actual out-of-pocket collection expenses not to exceed $150.00.

C. REBATE FOR PREPAYMENT: Upon prepayment in full, or upon acceleration of maturity, customer is entitled to a rebate of the unearned portion of the FINANCE CHARGE based upon the Rule of 78's, after deducting an Acquisition Charge of $25.00, if less than ½ the term of this loan has expired. No rebate of less than $1.00 will be made.

D. SECURITY INTEREST: This loan is secured by a Louisiana Chattel Mortgage of even date on the commodity described below. Said chattel mortgage also affects after acquired property and other indebtedness of customer to Bank.

| COMMODITY | NEW OR USED | YEAR AND MAKE | NO. CYL. | SERIES, MAKE OR TRADE NAME (Also "No." if applicable) | AUTO-Body Type (If truck, tons capacity) | H.P. '65 & LATER | IDENTIFICATION NO. (Serial or Motor No.) | STATE REGISTRATION NO. |
|---|---|---|---|---|---|---|---|---|
| Auto | N | 1976 | | Chevrolet Blaizer | | | CCL186F160836 | |

EQUIPMENT (Describe): ☒ Radio ☒ Heater ☒ Air Cond. ☐ Over-Drive ☐ Automatic Trans. ☒ Power Steering ☐ Power Brakes ☐ Power Seats ☐ Power Wind.

This loan is further secured by the pledge of any and all money or securities or other property whatsoever on deposit with, or in possession of, or under the control of Bank as collateral or otherwise, or in transit to and from Bank for any purpose, belonging to or to the credit of or for the account of customer.

E. INSURANCE: (1) <u>Property Insurance:</u> Customer is required to maintain insurance on the commodity described above for the term of this loan. Customer may choose the person through which such insurance is to be obtained. Customer is required to furnish Bank with a copy of such an insurance policy containing a long form loss payable clause in favor of the Bank.

(2) <u>Credit Life Insurance:</u> Credit Life Insurance is not required in order to obtain this loan. Customer may purchase such insurance coverage through Bank on a voluntary basis. No charge will be made and no insurance will be issued unless customer dates and signs the appropriate statement(s) below:

Cost of Credit Life Insurance for the term of loan: $_____157.24_____
☒ I desire Credit Life Insurance.
☐ I do not desire Credit Life Insurance.

I acknowledge by my signature below that the above insurance election statement was read before signing.

| /s/ Glenn A. Souife | March 26, 1976 |
|---|---|
| Name | Date |

I acknowledge that the proceeds of this loan are to be used for personal, family, or household purposes. I further acknowledge receipt of a completed copy of this Truth-in-Lending Disclosure Statement prior to my execution of the above referenced Louisiana Chattel Mortgage.

| /s/ J. R. Smith | /s/ Glenn A. Souife |
|---|---|
| Witness | Customer |

---

R. LANIER ANDERSON, III, Circuit Judge, concurring in part and dissenting in part:

I concur fully in Parts I and IV of the majority's opinion. I also concur in Part II because I agree that *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979), is binding upon this panel. I also concur in all of Part III of the majority's opinion except the majority's conclusion that there was not an adequate disclosure of the security interest in the proceeds of the property insurance. I believe that the language—"Customer is required to furnish Bank with a copy of such an insurance policy containing a long form loss payable clause in favor of the Bank"—would adequately disclose to an ordinary lay person the fact that, in the event of a loss, the proceeds of the property insurance policy would be payable to the Bank. Accordingly, I respectfully dissent from the majority's conclusion that there was not an adequate disclosure of the security interest in the *proceeds* of the property insurance.